**Dawn M. CHURNEY, Plaintiff,**

v.

**VILLAGE OF DOWNERS GROVE and Eagle Food Centers, Inc., Defendants.**

**No. 98 C 8312.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 26, 2000.

Thomas C. Crooks, Chicago, IL, for Plaintiff.

Enza L. Petrarca, Downers Grove, IL, for Defendants.

1. Eagle has settled this case and is no longer

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

In this somewhat unusual Title VII retaliation case, the plaintiff sued on the grounds that the employer whom she accuses of retaliation allegedly got her fired from a subsequent job because she had initiated a discrimination charge at her previous job two years before. Despite denying the factual accuracy of the key piece of evidence in the case, the Village of Downers Grove moves for summary judgment. I deny the motion.

Dawn M. Churney was fired from her job as a probationary police officer in Downers Grove, Illinois, on April 1, 1994. She filed a sex discrimination charge with the Illinois Department of Human Rights on May 4, 1994. In August 1996, Churney was employed part time as part of a security detail at the Downers Grove Eagle Foods ("Eagle") [1] as one of a number of off-duty police officers hired to combat shoplifting. Churney was then working regular hours as a police officer for the Village of Somonauk where she had been employed since October 1994. All the other participants in the Eagle security program were Downers Grove police officers.

Some weeks after the start of the detail, Andy Eliakis, the Eagle loss prevention director, had conversations with Downers Grove Police Chief George Graves, Deputy Chief Wiemer, and several other Downers Grove Police Department employees. After the conversation with Chief Graves, Eliakis fired Churney, telling her that Graves had said she was not supposed to be working on the detail and had no authority to initiate arrests. In a letter of March 10, 1997 to the Illinois Human Rights Commission, Eliakis stated that Churney had been fired because she was not a Downers Grove police officer and did not have the power to arrest anyone as would be required by the job.

Churney sued for retaliation under Title VII. Her theory is that Downers

a party.

Grove retaliated against her for filing the 1994 sex discrimination charge by giving false information to Eagle and other employers. Downers Grove asks for summary judgment. The standards for summary judgment are well known and need not be recited here. To make a case for retaliation, Churney must show that she (1) engaged in protected activity, (2) suffered adverse employment action, and (3) that these were causally related. *Hunt–Golliday v. Metro. Water Reclamation Dist.*, 104 F.3d 1004, 1014 (7th Cir.1997). That Churney engaged in protected activity in filing the complaint and suffered adverse employment action is not disputed.[2] The issue here is causal connection.

Downers Grove states that it provided only truthful information to Eagle and denies that Chief Graves or anyone else told Eliakis that Churney had no power to make an arrest. This is of course a classic jury question. I must assume for purposes of this motion that a Downers Grove police official told Eagle that she could not arrest anyone. This information is negative and helped get Churney fired.

█ Downers' Grove argues that the information is, however, true. It cites 725 ILCS 5/107–4(a)(3), giving the circumstances under which an on-duty peace officer can effect an arrest outside her own jurisdiction. But Churney was off-duty, so that provision is not relevant. In Illinois, a police officer "can make an extraterritorial warrantless arrest in the same situation that any citizen can make an arrest." *People v. Niedzwiedz*, 268 Ill.App.3d 119, 205 Ill.Dec. 837, 644 N.E.2d 53, 55 (1994) (*citing* 725 ILCS 5/107–3, stating that "[a]ny person may arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed."). A police officer exceeds his authority to make a citizen's arrest when he uses the powers of his

office to gather evidence unavailable to the private citizen outside his jurisdiction. *Id.* (*citing People v. Lahr*, 147 Ill.2d 379, 168 Ill.Dec. 139, 589 N.E.2d 539 (1992) (Off duty police officer may not arrest someone using a radar gun.)). However, Downers Grove does not argue that Churney would have had to thus exceed her powers in arresting shoplifters. What it does say is that Churney admits she did not have "full" arrest powers, that is, those that an on-duty officer would have in her own jurisdiction. It does not follow from that, however, that Churney had no arrest powers in Downers Grove. In fact, she did have the same arrest powers that anyone has in Downers Grove. Chief Graves's statement was therefore false. The question, of course, is whether giving such false and damaging information can be construed as retaliatory.

█ The problem for Churney is that while a causal connection can be inferred in a retaliation case from the close temporal proximity of the protected activity and the adverse action, *King v. Preferred Technical Group*, 166 F.3d 887, 893 (7th Cir. 1999), a two year gap would normally be enough to show that there was no causal connection unless there was other evidence. A substantial time lapse between the protected activity and the adverse employment action "is counter-evidence of any causal connection." *Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 480 (7th Cir.1995).

█ A long delay need not be fatal, however. "If the plaintiff has evidence from which one may reasonably infer that her former employer waited in the weeds for five or ten years and then retaliated against her for filing an EEOC charge, we see no difficulty with allowing the case to go forward." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 n. 6 (7th Cir.1996). Churney makes three arguments that a

---

**2.** The parties disagree about whether Downers Grove, as opposed to Eagle, took adverse employment action against Churney in this case, but post-termination acts of retaliation that have a nexus to employment are actionable under Title VII, *see Veprinsky v. Fluor*

*Daniel, Inc.*, 87 F.3d 881, 888 (7th Cir.1996), so it does not matter who took the adverse action as long as it was initiated by the employer who is the defendant in retaliation for protected activity.

jury might reasonably infer that Downers Grove had waited two years and then sandbagged her. The first is an inference to the best explanation: there is no other plausible reason that could be put forth, or at least that Downers Grove does put forth, for making this false and damaging statement. The second is that Chief Graves has provided negative information to other employers, notably giving her a bad reference to the Yorkville and Somonauk police departments. Third, she argues that Chief Graves has lied in various matters connected with this case, for example, whether he was involved in an effort to set up a new security detail after Churney was fired from Eagle and whether he knew Chief Graff of Yorkville, which he denied, but Chief Graff said that they spoke a dozen times a year for fourteen years.

Downers Grove does not offer any explanation for the false and damaging statement, denying, rather, that it was made or that it would have been false if it had been made. Downers Grove raises questions about the credibility of the witnesses who claim to have heard the statement, but credibility is a matter for the jury to decide. Moreover, the Eagle letter of March 10, 1997, states that Churney had been fired on the grounds that she could not arrest anyone in Downers Grove because she was no longer an employee of the Downers Grove police. A jury might believe that a Downers Grove police official had given this misinformation to Eagle.

Downers Grove tries to exclude bad references to other employers as being outside the scope of the EEOC charge. They are, but that only means that Churney cannot sue on them, not that they cannot be evidence of something she can sue on. Downers Grove also argues that she did not suffer adverse employment consequences from those references, but that is not the point, as she is not suing on them as retaliatory, but offering them as evidence of a causal connection.

The long and short of it is that a rational jury could conclude that Chief Graves nursed a long term grudge against Churney and retaliated against her by telling Eagle something he knew to be false and likely to get her fired. That he would say something of the sort at all is suspicious. He might not have known about the citizen's arrest rule and its applicability to police officers, but a jury might rationally doubt this. Why would he say that she did not have the power to make arrests except to harm her, and why would he want to do that except in retaliation? When coupled with his pattern of bad references to other employers and falsehoods in this case-as I must assume them to be for purposes of this motion-I conclude that there is a triable issue of fact. A jury might rationally believe that the Downers Grove police did not communicate any such misinformation or do it for any such malicious reason, but it would be reasonable to believe that they did do it in retaliation for her complaint.

Downers Grove's motion for summary judgment is accordingly DENIED.