Steve AUBUCHON, Plaintiff,

v.

KNAUF FIBERGLASS,
GMBH, Defendant.

No. IP 01–0392–CBG.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 10, 2003.

John P. Young, Young & Young, Steven L. Zakrocki, Betz & Associates, Indianapolis, IN, for Plaintiff.

Kenneth J. Yerkes, Barnes & Thornburg, Indianapolis, IN, for Defendant.

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARKER, District Judge.

### I. *Introduction.*

This is an action pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA"), which alleges two violations: interference and retaliation. It alleges, first, that the defendant Knauf Fiber Glass, Mr. Aubuchon's former employer, violated his substantive right to FMLA leave by refusing to approve the leave he requested. The result of the first

violation, according to Mr. Aubuchon, was that his absences increased, making him vulnerable to discharge for absenteeism. The complaint alleges, second, that Knauf discharged him because he exercised his right to FMLA leave on the first occasion.

The case is before us on Knauf's motion for summary judgment as to both claims, which we GRANT for the following reasons.

## II. *Statement of Facts.*

The following facts are either undisputed or stated in a light reasonably most favorable to the plaintiff as the party opposing summary judgment.

### A. *Mr. Aubuchon's First Termination.*

Mr. Aubuchon began working for Knauf in a general labor position in January 1998. DSOMF ¶ 1.[1] Mr. Aubuchon was a member of Local 32, Glass Molders, Pottery, Plastics & Allied Workers. The relationship between the union and the company is governed by a collective bargaining agreement (hereafter CBA). DSOMF ¶¶ 2, 3.

Knauf provides its employees, including Mr. Aubuchon, with an absentee counseling policy which outlines the company's attendance expectations and the consequences should an employee fail to meet them. Knauf takes absenteeism seriously and enforces its absence policies. Mr. Aubuchon was counseled on more than one occasion for excessive absenteeism. (Although Mr. Aubuchon takes issue with the term "counseling," Knauf's written policy is called "Absentee Counseling Policy." Tab 1, Ex. 6.) DSOMF ¶¶ 6, 11, 12, 13. Mr. Aubuchon received an "absentee counseling notice" on six occasions between April 12, 1999 and September 1, 2000. Tab 2, Ex. B.

Knauf uses a well-publicized "no fault" absence policy. Some employees work eight-hour shifts. Others, including Mr. Aubuchon work twelve-hour shifts. An employee on an eight-hour shift is assessed an absence "occurrence" by missing one eight-hour shift. An employee, such as Mr. Aubuchon is assessed 11/2 occurrences for missing a twelve-hour shift. If an employee reaches seven occurrences, he is issued a written notice that he will be terminated if he reaches twelve occurrences. DSOMF ¶¶ 56, 57.

Knauf also maintains a well-publicized, written procedure for employee FMLA leaves. Tab 1, Exs. 9–14. According to the procedure (Tab 1, Ex. 14) if an employee knows in advance of his need for FMLA leave, he must provide Knauf thirty days notice. If the employee requires unforeseen leave, he "must give as much notice as [he] can."

Mrs. Aubuchon was pregnant. An ultrasound predicted that she would deliver on August 19, 2000. DSOMF ¶ 32. She didn't. Instead, she experienced false labor on the weekend of August 19. She was observed at Reid hospital on two occasions and was subsequently discharged. DSOMF ¶ 35. She eventually gave birth on September 2. DSOMF ¶ 40.

Meanwhile, on August 21, Mr. Aubuchon phoned Knauf and left a voice mail for plant nurse Patty Shaw, stating that Mrs. Aubuchon was ready to go into labor at any time and that he needed FMLA leave to stay home and take care of her. DSOMF ¶¶ 43, 44 and Pl. Resp. In response to Mr. Aubuchon's voice mail, on August 22 Ms. Shaw sent him the company's FMLA document forms, including its

---

[1]. Pursuant to the version of Local Rule 56.1 then in effect, the parties submitted statements of fact. We abbreviate Defendant's Statement of Material Facts as "DSOMF." We abbreviate Plaintiff's Statement of Additional Material Facts as "PSAMF." Where we cite a response by a party to the opposing party's submission, we abbreviate the response as "Resp."

Health Care Provider Certification form. DSOMF ¶ 47. On September 1, Mr. Aubuchon returned the completed Certification form along with a medical slip dated August 31. Tab 1, Exs. 18, 19. On the Certification form, Mr. Aubuchon checked the box numbered three, which notes a "serious health condition" which the accompanying legend identifies as: "Pregnancy—Any period of incapacity due to pregnancy or prenatal care." Tab 1, Ex. 18. The medical slip read: "Stephanie Aubuchon is pregnant/ due this month any day. Steve is assisting his wife at home with their first child." Tab 1, Ex. 19. These are the only two documents that Mr. Aubuchon presented to Knauf with respect to his proposed FMLA leave. DSOMF¶ 49.

During this same period—between August 19 and September 3—Mr. Aubuchon missed nine 12–hour shifts: on August 19, 20, 23, 24, 25, 28, and 29, and on September 2 and 3. DSOMF ¶ 38. (By our unofficial count, this would represent 13½ "occurrences," more than the number which subjects an employee to discharge.) On August 28, 2000, Mr. Aubuchon contacted Bob Knecht, Production Superintendent, concerning his absences. DSOMF ¶ 50. Mr. Knecht has testified that Mr. Aubuchon told him that Stephanie Aubuchon had not experienced any complications, but that he was staying home to take care of her. Mr. Knecht told Mr. Aubuchon that, based on his current information, Mr. Knecht did not believe that FMLA leave would be granted. He told Mr. Aubuchon to get in touch with Human Resources Manager, Dan Hackler, about his absences. DSOMF ¶ 51–53. Mr. Aubuchon does not remember making a statement to Mr. Knecht to the effect that his wife was not experiencing complications. Pl. Resp. to DSOMF ¶ 51.[2] Although he did not contact Mr. Hackler about his absences, Mr. Aubuchon did contact Sandra Cassidy in Mr. Hackler's Human Resources Department. Pl. Resp. to DSOMF ¶ 53.

On September 4, 2000, Knauf denied Mr. Aubuchon's requested leave on the ground that it was not a qualified leave. Mr. Aubuchon already had been issued a seven-occurrence warning (August 6) and already had missed the nine 12–hour shifts. DSOMF ¶ 55. Accordingly, if the leave was not an FMLA qualified leave, as Knauf argues, then Mr. Aubuchon was subject to termination for violating Knauf's no-fault absence policy. In fact, he was terminated on September 14, 2000 ostensibly for accumulating 20.5 occurrences. DSOMF ¶¶ 54, 58.

---

2. Since this case turns substantially on what the employer knew and when it knew it, we cite Mr. Knecht's unrebutted testimony in detail. In his notes on Steve Aubuchon, made, he says, near the time of the events recorded, Mr. Knecht wrote:

8/28 Monday. [Mr. Aubuchon] did not report off. (Jim Krebs called him and told him he was on the [work] schedule and needed to report off). Monday afternoon Steve called me and told be [sic] he was on FML. He said that Patty [Shaw] was supposed to send him the paperwork and he has not received it. He told me that he thought his wife was going to have the baby on the 19th and [sic] 20th because she was having contractions so he was off work. *Since that time his wife has not had any complications and he is off work waiting for the baby to be born.* I told him that his leave has not been approved and based on what he was telling me it would not be granted until his wife actually had the baby unless she was having complications which the Dr. would require him to be here until the baby was born. I told him that he needed to see Dan Hackler ASAP to get the FML paperwork if he had not received it in the mail. (Patty is on vacation.) I also told him since he was on the schedule he needed to report to work and once his wife is in labor he should then call off. His next scheduled work day is tonight.

Tab 4, Knecht Dec., ¶ 2 and Dec. Ex. A ¶ 8/28. [Emphasis added.]

Pursuant to negotiations between the union and management, Mr. Aubuchon was reinstated with seniority and benefits, but without back pay. DSOMF ¶ 60.[3]

### B. *Mr. Aubuchon's Second Termination.*

Mr. Aubuchon filed this FMLA lawsuit on July 30, 2001. During the course of discovery, Knauf conducted the employee background check that it did not perform (or did conduct, but less than satisfactorily) before it hired him. It deposed Mr. Aubuchon and learned that, when he originally applied for employment at Knauf, he had omitted information concerning his prior employment; in particular, he omitted information about three employers which had discharged him for "attendance related issues." DSOMF ¶ 72.

Upon learning on November 26, 2001, that Mr. Aubuchon had "falsified" his employment application, Knauf fired him again, claiming that the termination was for "the[ ] material and blatant misrepresentations" that Mr. Aubuchon made on his employment application. DSOMF ¶ 79. Knauf asserts that it would not have hired him had it known of his past employment history. DSOMF ¶ 80.[4] Mr. Aubuchon acknowledges that, according to Knauf's policies, misrepresentation of an employment application is grounds for termination. DSOMF ¶ 79. He also acknowledges that, while he had no intention of misleading Knauf by omitting several prior jobs on his application, "Knauf terminated him in accordance with its internal policies after it discovered the omissions on his application." Pl. Opp. Brief, p. 24.

### III. *Discussion.*

#### A. *The Standard on Summary Judgment.*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eiland v. Trinity Hosp.,* 150 F.3d 747, 750 (7th Cir.1998).

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the nonmovant to "go beyond the pleadings" and point to evidence of a genuine factual dis-

---

**3.** Knauf claims that Mr. Aubuchon "agreed and signed the compromise agreement." DSOMF ¶ 61. The supposed "compromise agreement" is actually a "Personnel Action Form" which neither calls for nor reveals any "agreement" on Mr. Aubuchon's part. Tab 1, Ex. 33.

**4.** Defendant cites the affidavit of Operations Human Resources Manager, Daniel Hackler, for this proposition. Tab 2, ¶ 13. Mr. Aubuchon properly objects to Knauf's assertion on the ground that the cited paragraph does not

support it. But Tab 2, ¶ 15 explicitly does. It reads:

> As Human Resources Manager, I have personal knowledge of Knauf's hiring process. In addition, as the defendant's designated 30(b)(6) witness for Knauf, I also investigated the circumstances surrounding Mr. Aubuchon's hiring as delineated in the deposition notice. Plaintiff would not have been hired by Knauf Fiber Glass if his application disclosed that he was terminated on three prior occasions for attendance related issues.

pute precluding summary judgment. *Id.* at 322–23, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Anderson*, 477 U.S. at 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge*, 24 F.3d at 920. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. *Venters v. City of Delphi*, 123 F.3d 956, 962 (7th Cir.1997). If genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his case, summary judgment is not only appropriate, but mandated. *See*

*Celotex*, 477 U.S. at 322, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Waldridge*, 24 F.3d at 920.

## B. *Mr. Aubuchon's FMLA Claims.*

Mr. Aubuchon's complaint alleges two causes of action roughly corresponding to the provisions of 29 U.S.C. § 2615(a) and (b).[5] It alleges, first, that Knauf refused to grant him a leave to which he was entitled, thus interfering with his substantive statutory rights. And second, that Knauf retaliated against him for having exercised his FMLA rights. The two claims—one based on substantive rights, the other on prohibited behavior—are subject to different legal analyses. *Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1139 (7th Cir.2001); *Rice v. Sunrise Express*, 209 F.3d 1008, 1016–17 (7th Cir.2000); *King v. Preferred Technical Group*, 166 F.3d 887 (7th Cir.1999). For present purposes, the most important distinction between the two analyses is that the substantive rights claim does not require Mr. Aubuchon to present evidence of the employer's unlawful motive whereas the retaliation claim does.

### 1. *Mr. Aubuchon's Claim that Knauf Denied him a Qualified Leave.*

Mr. Aubuchon's first claim alleges that Knauf should have granted him a leave for which he applied and which was a qualified leave. By finding his request non-quali-

---

**5.** 29 U.S.C. § 2615(a) governs "interference with rights." It provides in pertinent part:

(1)"It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

(2)"It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

29 U.S.C. § 2615(b) governs "interference with proceedings or inquiries." and provides:

"It shall be unlawful for any person to discharge or in any other manner discrimi-

nate against any individual because such individual—

(1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;

(2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or

(3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter."

fied, he alleges, Knauf interfered with his rights under the FMLA. As we discuss in greater detail shortly, the underlying issue here involves the *kind* of notice that an employee must provide in order to qualify for FMLA leave under exigent circumstances. We begin with some basics.

The FMLA provides periods of leave for qualified employees under specified circumstances. (We refer throughout to employees who are otherwise qualified for leave pursuant to 29 U.S.C. § 2611(2) and (4).) The principal circumstance for the leave at issue here is defined by the statute: an employee is entitled to take FMLA leave "in order to care for the spouse ... of the employee, if such spouse ... has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).[6] Mr. Aubuchon alleges that he qualified for FMLA leave because his wife was experiencing complications in delivering their newborn and he was needed to assist in the delivery. PSAMF ¶ 86.

We assume, without deciding, that a spouse's assisting in the delivery of a newborn is a circumstance under which leave must be granted by the employer because the term "serious health condition" expressly includes "*any period of incapacity due to pregnancy, or for prenatal care.*" 29 CFR § 825.114(a)(2)(B)(ii) (emphasis added). We have difficulty imagining delivery of a child that does not constitute a period of "incapacity." Based on this initial assumption, we further assume that Mr. Aubuchon was entitled to leave.

An employee who wishes to take leave pursuant to the FMLA must provide notice. Federal regulations, specifically 29 CFR § 825.302(a), provide for two kinds of notice: notice of a foreseeable leave; and notice of a leave that is not foreseeable (which we will refer to as "exigent leave" or leave under "exigent circumstances"). The regulation provides:

(a) An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on an expected birth, placement for adoption or foster care, or planned medical treatment for a serious health condition of the employee or of a family member. If 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable.

■ Where a leave is foreseeable, the employee must (if, as here, the employer requires) provide the employer with thirty-days notice. Where the leave is not foreseeable, the employee must provide notice "as soon as practicable."[7] But regardless of whether the requested leave is foreseeable or exigent, an employee seeking leave for a serious health condition must provide the employer with *some* kind of notice. *Collins v. NTN–Bower Corp.,* 272 F.3d 1006, 1008 (7th Cir.2001); *Stoops v. One Call Communications, Inc.,* 141 F.3d 309, 312 (7th Cir.1998) (employee must provide employer with enough information to put the employer on notice that FMLA-qualifying leave is needed).

---

**6.** Section 2612(a)(1)(A) also applies more broadly: "Because of the birth of a son or daughter of the employee and in order to care for such son or daughter." Since the focus of this case is Mr. Aubuchon's allegation that his wife experienced *complications* during delivery, subsection (C) provides a closer fit.

**7.** " 'As soon as practicable' means as soon as both possible and practical, taking into account all the facts and circumstances in the individual case.... [It] ordinarily would mean at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee." 29 CFR § 825.302(b); see also 29 CFR § 825.303(a).

Contrary to some of the arguments presented by the parties, the issue here is not whether Mrs. Aubuchon had "a serious health condition." We have concluded that she did. But knowing that Mrs. Aubuchon had a serious health condition does not resolve the key issue before us: whether the notice Mr. Aubuchon provided was sufficient to notify Knauf that Mr. Aubuchon sought *exigent* leave. *All* leaves pursuant to 29 CFR § 825.112(a)(3) require the employee to demonstrate a "serious health condition." Accordingly, there must be some substantive difference between a notice requesting leave for a *foreseeable* serious health condition and a notice requesting leave for an *unforeseeable* serious health condition. This case tests the *kind* of notice that an employee must provide in order to qualify for exigent leave for a serious health condition.

Neither the statute nor the regulations provide much guidance. The regulations inform us that: "If 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable." 29 CFR ¶ 825.302(a). This provision focuses on the *timing* of notice, but it also provides us with some insight into the *kind* of notice required. It suggests that, for an employee to qualify for exigent leave, he must provide the employer with notice that points not merely to a serious health condition—which is *always* required, whether the leave is foreseeable or not—but notice that he lacked (or lacks) "knowledge of approximately when leave will be required to begin," or that there has been "a change in circumstances," or that there is "a medical emergency." This

is consistent with the Seventh Circuit's decision in *Collins v. NTN–Bower Corp.,* 272 F.3d 1006, 1008 (7th Cir.2001), where the court observed that "notice is essential even for emergencies. See 29 C.F.R. § 825.303."

In this case, only "a change of circumstances" or "a medical emergency" applies. We rule out "knowledge of approximately when the leave will be required to begin" because Mr. Aubuchon knew that the leave had to begin "any day" now, and he informed Knauf of that fact. Additionally, Mr. Aubuchon argues on summary judgment that he wanted FMLA leave because his wife was experiencing "complications" due to the delivery of their child. Indeed, he asserts that he would not have sought FMLA leave merely for the birth of his child. PSAMF ¶ 101.[8] This clearly implicates a "change in circumstances" or a "medical emergency."

■ Although the parties expended considerable energy arguing the merits of whether Mrs. Aubuchon actually experienced "complications" in her delivery and whether "false labor" is the kind of "complication" contemplated by the FMLA, we do not need to reach that set of questions. Instead, since notice by the employee is the event that triggers FMLA leave, we ask the prior question: whether Mr. Aubuchon provided notice to Knauf of a "change in circumstances" or of a "medical emergency," the kind of notice that should have led Knauf to the conclusion that he was asking for exigent leave. We conclude that he did not.

Mr. Aubuchon provided notice on three occasions: in a voice mail to nurse Patty Shaw on August 21; in a phone conversation with Plant Manager Knecht on August 28; and in the written company form on or

---

**8.** Also see PSAMF ¶ 104. Mr. Aubuchon writes: "Mr Aubuchon did not request FMLA leave because of the birth of a child. In fact, he informed Ms. Shaw that 'the doctor told

me that I should stay home with my wife to care for her **until** she had given birth to our child and that I needed to go on FMLA.'" Pl. Opp. Brief, p. 11 (emphasis original).

about September 1. We consider these notices in turn.

In his voice mail to Nurse Shaw on August 21, Mr. Aubuchon said that he needed FMLA leave because of Mrs. Aubuchon's delivery of a newborn. DSOMF ¶ 43. Shortly after his termination, Mr. Aubuchon reflected that, in the message he had left for Patty Shaw, he indicated that his wife was ready to deliver at any time and that he needed to go on FMLA leave. Assuming that Mr. Aubuchon gave precisely such notice, neither of these statements, nor both together, were sufficient to raise an inference that there had been a change in circumstances or that there was a medical emergency. Mr. Aubuchon states on summary judgment that he "testified that he stayed home to take care of his wife because of *complications* of pregnancy," and points to his deposition, p. 50, to support this assertion. [Emphasis added.] The cited deposition testimony does not support an inference that he mentioned complications. The passage reads:

Q: And what was the content of the voice mail [to Patty Shaw].

A: That the doctor had told me that I should stay home with my wife to care for her until she had given birth to our child and that I needed to go on FMLA.

[Aubuchon Dep., p. 50.] Even assuming that the doctor told Mr. Aubuchon to stay home to care for his wife and even assuming that Mr. Aubuchon had told Knauf of that event in his voice mail to Patty Shaw, we could not conclude that these statements put Knauf on notice that Mr. Aubuchon needed *exigent* leave.

Mr. Aubuchon's voice mail notified Knauf of his desire for FMLA leave, and on August 22 Knauf sent him the pertinent application to be filled out. In doing so, Knauf was informing Mr. Aubuchon of its usual and customary requirements pertaining to notice. 29 C.F.R. § 825.302(d) ("[a]n employer may . . . require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave."); *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 971–72 (7th Cir.2000).

■ A week after his voice mail message to Nurse Shaw, and before Mr. Aubuchon filled out and returned the paperwork, he spoke with Production Superintendent, Bob Knecht. On August 28, 2000, Mr. Aubuchon contacted Mr. Knecht about the absences he had already accrued since August 19. According to Mr. Knecht, Mr. Aubuchon told him that Mrs. Aubuchon had not experienced any complications, but that he was staying home to take care of her. Mr. Aubuchon does not remember making a statement to Mr. Knecht to the effect that his wife was not experiencing complications. Mr. Aubuchon's lack of recollection, however, is not enough to raise a genuine issue of material fact in the face of Mr. Knecht's positive testimony to the contrary. *See, Tinder v. Pinkerton Security*, 305 F.3d 728, 735–736 (7th Cir.2002); *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1211 (7th Cir.1993).

■ Mr. Aubuchon's written application for leave, which he submitted on or about September 1, 2000, states: "Husband assisting with his first child while wife about to deliver." And: "Wife 40 weeks & 5 days. EDC 'anytime.'" Tab 1, Ex. 18. This notice was accompanied by the medical slip from Dr. Bertsch cited earlier, which read: "Stephanie Aubuchon is pregnant/due this month any day. Steve is assisting his wife at home with their first child." Tab 1, Ex. 19. Nothing in these documents suggests a change in circumstances or a medical emergency.[9]

---

**9.** Even if we assume that Mr. Aubuchon sought leave because he needed to care for a

Mr. Aubuchon has presented legally insufficient evidence to show that any of these notices—not the voice mail message, not the phone conversation with Mr. Knecht, not the application documents, nor all of them together—called Knauf's attention to any "change in circumstances" or any "medical emergency." From all appearances, the pregnancy was routine. It follows that, based on what it knew at the time Mr. Aubuchon sought the leave, there was no reason for Knauf to think that Mr. Aubuchon was entitled to *exigent* leave.

This conclusion squares with those of other decisions, including *Collins,* where the Seventh Circuit affirmed summary judgment where the plaintiff had missed work for two days and notified the employer that she was "sick." The employee later argued that she had been suffering from a serious health condition. The Seventh Circuit held that, even assuming the plaintiff had suffered from a serious health condition, her claim failed as a matter of law because she had not given her employer adequate notice of her need for FMLA leave. *Also see Satterfield v. Wal–Mart Stores, Inc.,* 135 F.3d 973, 980 (5th Cir. 1998) (summary judgment affirmed where notice to employer that employee "was having a lot of pain in her side" and that she was "sick" was insufficient as a matter of law to establish notice of exigent circumstances); *Carter v. Ford Motor Co.,* 121 F.3d 1146 (8th Cir.1997) (summary judgment affirmed where employee, actually suffering from anxiety and depression, notified employer that he was "out sick" with "family problems" that were "personal" in nature because notice was inadequate for exigent leave); *Gay v. Gilman Paper Co.,* 125 F.3d 1432 (11th Cir.1997) (summary judgment affirmed where employee suffered nervous breakdown and husband's notice to employer that she was

in the hospital "having some tests run" inadequate as a matter of law to establish need for exigent leave).

■ Mr. Aubuchon argues that, given his phone calls and application for leave, Knauf had a duty to inquire further. He argues that, once it saw that Mr. Aubuchon put in for FMLA leave because of a "serious health condition," Knauf had a duty to inquire into the nature of the serious health condition. He also argues that an inconsistency in his application should have caught Knauf's attention and that Knauf had a duty to make further inquiry. The inconsistency, he argues, was on his FMLA leave application which contained a box check-marked at number 3, indicating "serious health condition," and the rest of the form, which didn't appear to warrant a finding of a serious health condition. He argues:

> This certification form, with box number three (3) checked, was sufficient to put Knauf on notice that Mr. Aubuchon's absence qualified as FMLA leave. However, according to Knauf, the information on the rest of the form indicated that the FMLA request was confusing. (Hackler Dep. pp. 23–25). Based on Knauf's confusion, as well as the contradiction between paragraph three (3) and the rest of the form, it was Knauf's duty to inquire further and allow Mr. Aubuchon a chance to cure any perceived deficiencies contained in his FMLA medical certification.

Pl. Opp. Brief, p. 16.

■ Mr. Aubuchon is correct in principle. An employer does have a duty to make further inquiry under some circumstances, when, for example, the employer needs "additional information." *Stoops v. One Call Communications, Inc.,* 141 F.3d 309, 312 (7th Cir.1998); 29 C.F.R.

family member, he was required to provide a medical certification that he is "needed to

care for" a family member. 29 CFR § 825.116(a).

§ 825.303(b). While an employer has a duty to inquire, however, it must have some reason to do so. Mr. Aubuchon's notices gave no reason for Knauf to inquire further.

Indeed, perhaps ironically, the fact that Mr. Aubuchon provided notice on three occasions may have made it *less* likely that Knauf would need to inquire further. Since on three separate occasions Mr. Aubuchon made no mention of complications or other medical emergency, Knauf had reason to conclude—as it argues on summary judgment that it did conclude—that he was asking for a leave that had been foreseeable and not for exigent leave. Mr. Aubuchon's returned application for leave tends to support Knauf's conclusion. Question number 4 on the application form asks the applicant to: "Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories." The categories are numbered 1–6 and correspond to the different reasons for FMLA leave. As previously noted, Mr. Aubuchon checked number 3, corresponding to "any incapacity due to pregnancy." But the space requesting an explanation on Question 4 is, inexplicably, blank.[10]

In sum, we see no inconsistency or contradiction between the box check-marked 3 and the rest of the form—or none which raises a material issue of fact about whether Knauf saw an inconsistency or had a duty to do so. We have assumed throughout that "any incapacity due to pregnancy" is a serious health condition. But Knauf had reason to view the incapacity as a

foreseeable event requiring thirty days notice. In sum, Knauf knew that Mr. Aubuchon was seeking leave for "a serious health condition." But since the notice he provided did not notify Knauf of *exigent* circumstances—a change in circumstances or a medical emergency—Knauf had no reason to inquire further.

■ Mr. Aubuchon also argues that he provided evidence after his termination—in the November 27, 2000 medical form—that Mrs. Aubuchon really had suffered from complications. This does not help his cause. In the first place, we have assumed that she did suffer from a serious health condition; and in the second, "the critical inquiry" in an employment case is what the employer knew and did not know (or believed or did not believe) "at the moment" the employment decision was made. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240–241, 109 S.Ct. 1775, 1785, 104 L.Ed.2d 268 (1989). It follows that Knauf could have acted only on the basis of what it knew at the time: that Mr. Aubuchon was seeking the kind of leave that required thirty days notice.

Since Mr. Aubuchon failed to provide Knauf with notice sufficient to qualify for exigent leave, we conclude that Knauf properly found the leave to be non-qualifying. Accordingly, we GRANT Knauf summary judgment on Mr. Aubuchon's entitlement claim.

### 2. *Mr. Aubuchon's Claim of Retaliatory Discharge.*

■ Mr. Aubuchon alleges two acts of retaliation. One appears to be an alterna-

---

**10.** It is conceivable that a plaintiff might think that "any incapacity due to pregnancy," by itself, warrants exigent FMLA leave. But Mr. Aubuchon expressly rejects that theory in his response to summary judgment, where he states: "Mr. Aubuchon concedes that a pregnancy without any medical complications does not qualify as a serious health condi-

tion." Pl. Opp. Brief, p. 17. Our analysis throughout this entry assumes that "any incapacity due to pregnancy"—which might, after all, include the delivery itself—*is* a serious health condition. It follows that an employee is entitled to leave for it—but not, necessarily, *exigent* leave.

tive to his entitlement (or interference) claim: that Knauf fired Mr. Aubuchon on September 14 in retaliation for having exercised his right to take leave. The second is that Knauf eventually fired him on November 26, 2001 in retaliation for having exercised his rights or brought this lawsuit. Neither of these claims is meritorious.

 The Seventh Circuit outlined the proof scheme in FMLA retaliation cases in *Horwitz v. Board of Educ. of Avoca School Dist. No. 37*, 260 F.3d 602, 616–617 (7th Cir.2001). In such cases, "[t]he issue becomes whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Id. quoting King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir.1999). On summary judgment, Mr. Aubuchon must raise a reasonable inference that Knauf engaged in intentional retaliation. Absent direct evidence, he may do so by showing: (1) he engaged in a protected activity; (2) Knauf took an adverse employment action against him; and (3) there is a causal connection between his protected activity and the defendants' adverse employment action. *Id.Accord, King*, 166 F.3d at 892; *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir.1997).

Both of Mr. Aubuchon's retaliation claims fail to satisfy the third element. The first claim is that Knauf retaliated against him in September 2001 for requesting leave to care for his wife by denying him the leave; denying the leave meant that his accrued absences were unexcused and subjected him to discharge. It follows, he argues, that but for Knauf denying him the FMLA leave, he would not have accrued unexcused absences and would not have been fired. There are two reasons why this claim must fail; the first is dispositive by itself: since we have already found that Knauf did not violate the

statute *at all* in denying him the leave, then it could not have violated the statute *intentionally*. Stated differently, since Knauf was justified in finding that the leave Mr. Aubuchon requested was nonqualifying because it lacked adequate notice of exigent circumstances, then Knauf did not violate the statute by denying him the leave.

But even if we perform the familiar *McDonnell–Douglas, Burdine* burden-shifting minuet outlined in *Horwitz*, we conclude that Mr. Aubuchon has presented insufficient evidence of causation and none to rebut Knauf's legitimate, non-retaliatory reason for discharging him the first time. We are not persuaded by Mr. Aubuchon's argument that, but for Knauf's motive to retaliate, Mr. Aubuchon would not have accrued the excessive number of occurrences. This confuses the *occasion* for the discharge with its *cause*. A jury could reasonably conclude from the evidence that the causes of the discharge were Mr. Aubuchon failing to give adequate notice of exigent leave and taking nine days of leave before any leave was approved. The same jury could not reasonably infer from the evidence that the timing of the discharge— one day after Mr. Aubuchon returned from the unexcused leave—is suspicious enough to warrant a verdict in Mr. Aubuchon's favor. The discharge of September 14, 2001 was manifestly because Mr. Aubuchon had accrued too many occurrences, and he presents insufficient evidence to raise an inference that the reason he accrued them is attributable to Knauf's retaliatory animus.

 Mr. Aubuchon next argues that firing him on November 26, 2001, was in retaliation for his having filed a grievance over the initial discharge and having filed the instant lawsuit. We assume that Mr. Aubuchon presents sufficient evidence of a prima facie case of retaliation. By fil-

ing his grievance and his lawsuit alleging that Knauf violated his statutory rights, Mr. Aubuchon clearly engaged in protected conduct. By presenting evidence that it fired Mr. Aubuchon because he omitted material facts on his employment application, Knauf sustained its burden of presenting evidence of a legitimate, non-retaliatory reason for taking its adverse employment action. It remains for Mr. Aubuchon to present sufficient evidence to raise a reasonable inference that there is a causal connection between his engaging in the protected conduct and Knauf's discharge of him—in other words, that Knauf's explanation is pretextual. *Id.* As is often the case, the plaintiff has presented legally insufficient evidence of the causal connection.

Indeed, on this score, Mr. Aubuchon makes fatal admissions. He acknowledges that, according to Knauf's policies, an employee may be terminated for including false or misleading information on an employment application. He also acknowledges that, while he had no intent to mislead or deceive Knauf by omitting several prior jobs on his application, "Knauf terminated him in accordance with its internal policies after it discovered the omissions on his application." Pl. Opp. Brief, p. 24. These admissions are fatal. *Woods v. City of Chicago,* 234 F.3d 979, 989 (7th Cir. 2000) ("An 'admission' includes … statements made in a brief presented to the district court"); *U.S. v. One Heckler–Koch Rifle,* 629 F.2d 1250, 1253 (7th Cir.1980) (citing Wright & Miller, *Federal Practice & Procedure: Civil* § 2723 to the effect that "admissions in the brief of the party opposing the motion may be used in determining that there is no genuine issue as to any material fact, since they are functionally equivalent to 'admissions on file' ").

According to the after-acquired evidence doctrine outlined in *McKennon v. Nash-*

*ville Banner Pub. Co.,* 513 U.S. 352, 361–362, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995): "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." Here, Mr. Aubuchon admits that Knauf followed its procedures in discharging him after discovering that he omitted material information on his employment application. He does not deny that Knauf *could* have fired him for omitting the information; he doesn't even deny that it *would* have done so had it known of the omissions. He argues merely that he had no intent to deceive. But Knauf's policy with respect to applications has nothing to do with the applicant's subjective intent. It makes termination a permissible punishment for including false or misleading information. Mr. Aubuchon's application admittedly contained misleading information.

### IV. *Conclusion.*

For the reasons discussed, Mr. Aubuchon has failed to present evidence sufficient to raise a genuine issue of material fact as to either of his FMLA claims. Accordingly, we GRANT defendant's motion for summary judgment as to both.