Regina R. KING, Plaintiff–Appellant,

v.

PREFERRED TECHNICAL GROUP, Defendant–Appellee.

No. 98–1538.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1998.

Decided Jan. 28, 1999.

Christopher .C. Myers (argued), Myers & Geisleman, Fort Wayne, IN, for Plaintiff–Appellant.

Kathleen M. Anderson, Barnes & Thornburg, Fort Wayne, IN, Steven C. Ellingson (argued), Smith, Currie & Hancock, Atlanta, GA, for Defendant–Appellee.

Before CUMMINGS, KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Regina King initially claimed that Preferred Technical Group ("PTG") discriminated against her by terminating her employment in violation of the Americans with Disabilities Act ("ADA") and in retaliation for exercising her rights under the Family and Medical Leave Act ("FMLA" or "Act"). King began her employment with PTG as an assembler/packer in February 1995 at the company's Columbia City, Indiana, facility. During King's employment with PTG, the employees of that facility were members of the United Automobile, Aerospace & Agricultural Implement Workers of America Union, Local 2049 ("Union"). The Union's collective bargaining agreement provided that an employee could be terminated automatically upon a failure to return to work at the expiration of a period of approved leave of absence, unless the employee requested and was granted an extension. PTG also had an attendance policy which provided that an em-

ployee could be terminated upon a failure to return to work on the work day preceding the expiration of any leave period.

In June 1996, King began experiencing significant health problems, including unexplained weight loss, nausea, dizziness, and blurred vision. King requested a leave of absence as a result of these problems. Dawn Adams, PTG's human resources manager, initially denied King's request for leave because Adams was not convinced that King's health problems met the statutory requirements of the FMLA. As such, PTG offered King only short-term disability benefits. However, after further consultation with her physician, King was diagnosed as having sarcoidosis. This condition, for which there is no known cure, causes swelling and dysfunction of certain bodily organs as well as skin lesions. Upon being diagnosed with this illness, PTG treated King's leave of absence as one pursuant to the FMLA.

After the expiration of her initial leave period, King provided PTG with documentation from her physician on five separate occasions indicating that her leave would need to be extended. PTG granted each of the five extensions. King's condition gradually improved, and her physician cleared her to return to work without restrictions on August 25, 1996. Despite this clearance, King failed to return to work, and PTG terminated her the following day.

The parties dispute the underlying circumstances that resulted in King's termination. King alleges that during the week immediately preceding her termination, she met with Adams to discuss her return at the expiration of her leave period. During this meeting, Adams supposedly informed King that some of the doctor's slips documenting her need for extensions of her medical leave during July 1996 were missing from her personnel file. According to King, Adams also instructed her that she would not be able to return to work unless she could account for the missing slips. Complicating matters for King, neither Adams nor any other member of PTG's Human Resources Department could identify which slips were missing from King's file. In reliance on the instructions received from Adams, King did not return to

work on August 25. This absence resulted in King's termination. Adams denied this version of events.

King then filed suit against PTG alleging that her termination violated the ADA and the FMLA. PTG moved for summary judgment. The District Court concluded that King was not a qualified individual with a disability under the ADA and that she failed to present sufficient evidence that the termination of her employment was in retaliation for the exercise of her rights under the FMLA. Accordingly, the District Court granted PTG's motion for summary judgment on King's ADA and FMLA claims. On appeal, King challenges only the District Court's grant of summary judgment on the FMLA claim.

### ANALYSIS

#### A. Summary Judgment Standard

■ We review a district court's grant of summary judgment de novo, drawing our own conclusions of law and fact from the record before us. See Thiele v. Norfolk & Western Ry. Co., 68 F.3d 179, 181 (7th Cir. 1995). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We must bear in mind that "[t]his standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## B. The FMLA Claim

### 1.

The FMLA establishes two categories of broad protections for employees. First, the FMLA contains prescriptive protections that are expressed as substantive statutory rights. The Act provides eligible employees of a covered employer the right to take unpaid leave for a period of up to twelve work weeks in any twelve-month period for a serious health condition as defined by the Act. 29 U.S.C. § 2612(a)(1). After the period of qualified leave expires, the employee is entitled to be reinstated to the former position or an equivalent one with the same benefits and terms of employment that existed prior to the exercise of the leave. 29 U.S.C. § 2614(a). To insure the availability of these guarantees, the FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1).

▮▮▮▮ When an employee alleges a deprivation of these substantive guarantees, the employee must demonstrate by a preponderance of the evidence only entitlement to the disputed leave. In such cases, the intent of the employer is immaterial. *See Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir.1997) ("We shall continue to resolve suits under the FMLA ... by asking whether the plaintiff has established, by a preponderance of the evidence, that he is entitled to the benefit he claims."); *see also Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.1998) ("Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.").

In addition to the substantive guarantees contemplated by the Act, the FMLA also affords employees protection in the event they are discriminated against for exercising their rights under the Act. *See* 29 U.S.C. § 2615(a)(1) & (2). Specifically, "[a]n employer is prohibited from discriminating against employees ... who have used FMLA leave." 29 C.F.R. § 825.220(c). Furthermore, an employer may not consider the taking of FMLA leave as a negative factor in employment actions. *Id.* Because the FMLA's implementing regulations bar certain discriminatory conduct, the protections contemplated by these sections have been characterized as proscriptive in nature. *See Hodgens,* 144 F.3d at 160.

▮▮▮▮ In contrast to what an employee must show to establish a deprivation of a substantive guarantee under the Act, when an employee raises the issue of whether the employer discriminated against an employee by taking adverse action against the employee for having exercised an FMLA right, the question of intent is relevant. The issue becomes whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus. *Id.* ("In such a case, the employer's motive is relevant, and the issue is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.").

▮▮▮▮ King contends that PTG abridged her rights under this second set of protections contemplated by the FMLA. Thus, the issue of intent is central to her claim. King asserts that PTG violated the FMLA when it terminated her employment because she took leave to which she was entitled under the FMLA. When a plaintiff alleges a retaliatory discharge under other anti-discrimination laws, courts employ the familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in the absence of direct evidence of an employer's intent. *See, e.g., Vanasco v. National–Louis Univ.*, 137 F.3d 962, 965 (7th Cir.1998) (Age Discrimination in Employment Act); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 885 (7th Cir. 1998) (Title VII of the Civil Rights Act of 1964); *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1121 (5th Cir.1998) (ADA); *Williams v. Widnall*, 79 F.3d 1003, 1005 & n. 3 (10th Cir.1996) (Rehabilitation Act). The *McDonnell Douglas* framework provides "a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *United States Postal Serv. Bd. of*

*Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). When a plaintiff alleges a retaliatory discharge under the FMLA, the plaintiff must similarly establish that the employer engaged in intentional discrimination. We find no reason to treat an intent-based FMLA claim, such as that raised by King, any differently than other retaliatory discharge cases.[1] *Accord Hodgens,* 144 F.3d at 160 ("Such issues [brought under the FMLA] are analogous to those raised in cases involving other types of discrimination."); *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997). Therefore, in the absence of direct evidence of discrimination, we will apply the *McDonnell Douglas* burden-shifting framework to claims that an employer discriminated against an employee exercising rights guaranteed by the FMLA.

**2.**

■ In *McDonnell Douglas,* the Supreme Court established a three-part framework governing the order and allocation of proof in cases alleging discrimination in violation of Title VII. To prove an employer discharged an employee in retaliation for engaging in a protected activity, the complainant must initially set forth a prima facie case of prohibited discrimination. *See Essex v. United Parcel Serv., Inc.,* 111 F.3d 1304, 1308–09 (7th Cir.1997) (delineating the requirements for the establishment of a prima facie case of retaliatory discharge in violation of Title VII); *Johnson v. City of Fort Wayne,* 91 F.3d 922, 938–39 (7th Cir. 1996) (same). To establish a prima facie case of retaliatory discharge, a plaintiff must establish that: (1) the plaintiff engaged in a protected activity; (2) the employer took adverse employment action against the employee; and (3) there is a

causal connection between the employee's protected activity and the employer's adverse employment action. *See Hodgens,* 144 F.3d at 161; *Morgan,* 108 F.3d at 1325. To demonstrate the "causal link," the employee must demonstrate that the employer would not have taken the adverse employment action but for the employee's protected activity. *See Johnson,* 91 F.3d at 939.

■ Upon the establishment of a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and "drops from the case," *id.* at 255 n. 10, 101 S.Ct. 1089; *see also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The plaintiff, then, has the opportunity to demonstrate that "the proffered reason was not the true reason for the employment decision" and that the employee's participation in the protected activity was, in fact, the real reason for the employment action at issue. *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. At all times throughout this burden-shifting approach, the plaintiff retains the ultimate burden of persuasion. *Id.*

■ Under the third step of the *McDonnell Douglas* framework, the plaintiff has the opportunity to submit evidence establishing that the employer's proffered reasons are merely a pretext for discrimination. The plaintiff must produce evidence from which a rational fact finder could infer that the employer engaged in intentional discrimination on the basis of the plaintiff's protected trait or action. In order to meet this burden, the plaintiff must proffer significantly probative admissible evidence showing that the employer's articulated reason for the dis-

---

[1]. In *Diaz,* we foreclosed the extension of the *McDonnell Douglas* framework to cases in which an employee alleges a deprivation of the FMLA's substantive guarantees by an employer. 131 F.3d at 713. Such claims do not turn on an employee's ability to demonstrate some sort of discriminatory animus by the employer and, as stated, simply turn on the employee's ability to demonstrate entitlement to the guarantees. *Id.*

at 712–13. Although we stated that "[w]e shall continue to resolve suits under the FMLA ... by asking whether the plaintiff has established, by a preponderance of the evidence, that he is entitled to the benefit he claims," we reserved judgment on whether it would be appropriate to extend the *McDonnell Douglas* framework to retaliatory discharge cases brought pursuant to the FMLA such as the one presently before us. *Id.* at 713.

charge was a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The Supreme Court explained that "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* (emphasis in the original); *see also McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 797 (7th Cir.1997) ("Once the employer makes this showing [of a legitimate, non-discriminatory reason for the adverse employment action], the burden then shifts back to the employee to show that the employer's proffered reasons are pretextual and that its actual reason was discriminatory or retaliatory.").

**3.**

Turning to the case before us, there can be no dispute that sufficient evidence exists in the record to satisfy the first two factors required to establish a prima facie case of retaliatory discharge. King engaged in protected activity by taking leave pursuant to the FMLA, and PTG's termination of her qualifies as an adverse employment decision. The evidence also establishes the third component of the prima facie case, the demonstration of a causal link between the employee's participation in the protected activity and the adverse employment action. This element may be satisfied by reference to the temporal proximity between King's taking of the protected leave and her termination. "Generally, a plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir.1994). Evidence demonstrating such a connection "is generally enough to satisfy the third element of the prima facie test." *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir.1996). PTG terminated King only one day after she completed her leave of absence under the FMLA. Such a close proximity is sufficient to establish a prima facie case of retaliation. *See, e.g., McClendon*, 108 F.3d at 797 (concluding that a sequence of events over a 2–3 day period between the protected activity and the adverse employment action was sufficient to establish a prima facie case of retaliation).

Because the evidence in the record before us establishes a prima facie case of retaliation under the FMLA, the burden of production shifts to PTG to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. At this stage in the analysis, "the [employer] need not persuade the court that it was actually motivated by the proffered reasons," *id.*; it must only raise a genuine issue of fact as to whether it discriminated against the plaintiff.

In the instant case, evidence in the record demonstrates PTG's ability to satisfy its burden to proffer a legitimate, non-discriminatory reason for King's termination. At the time of King's termination, the employees at PTG's facility, including King, were parties to a collective bargaining agreement by virtue of their membership in the Union. This agreement provided that an employee could be terminated automatically in the event an employee did not return to work at the expiration of a leave of absence or did not request and receive an extension of the leave of absence. In conjunction with this policy, PTG enacted its own attendance policy that similarly provided that an employee could be terminated if the employee did not return to work the day following the expiration of a period of leave. According to PTG, King was terminated pursuant to these well-established policies after she failed to return to work at the expiration of her leave of absence. This explanation is both reasonable and non-discriminatory. For this reason, the burden of production is satisfied.

Under the *McDonnell Douglas* framework, once the prima facie case has been rebutted, the plaintiff has the opportunity to demonstrate that the legitimate reasons offered by the defendant were a pretext for discrimination. The presumption of discrimination raised by the plaintiff's prima facie case effectively "drops out of the picture." At this point, the plaintiff bears the burden of persuasion to demonstrate that the employer's stated reasons were false and that discrimination was the real reason behind the adverse employment decision at issue.

Here there are factual assertions that could allow a reasonable trier of fact to conclude that PTG retaliated against King for taking leave under the FMLA. The record contains evidence that, if believed, could demonstrate that PTG's explanation for her termination was, at a minimum, disingenuous. During the proceedings below, King submitted an affidavit detailing her conversation with Dawn Adams, PTG's human resources manager, that occurred approximately one week prior to King's termination. King's affidavit contends that during their meeting, Adams informed King that her personnel file was missing an unspecified number of the doctor's slips detailing the need for extensions of King's period of leave. The affidavit also states that Adams instructed King that she would not be permitted to return to work until she could produce the missing slips. King's efforts at contacting Adams after their initial conversation were unsuccessful. Moreover, it is asserted that no one at PTG ever told King which slips were missing or suggested to her that she should seek to have her leave extended to provide her with an opportunity to locate the missing slips and avoid termination. King's deposition and an affidavit submitted by her husband, James King, who was present at the meeting between Adams and his wife, reiterated this version of the events.

■ In essence, King claims that because she availed herself of leave under the FMLA, PTG concocted the story that she was missing unidentified doctor's slips, instructed her that she could not return to work without these slips, and then terminated her for following these instructions. This claim of retaliation is supported by affidavits and a deposition containing facts of which King and her husband have personal knowledge. The affidavits and the deposition, if accurate, are sufficient to cast doubt on the reasons proffered by PTG for King's termination. When these facts are considered in light of the close temporal relationship between the alleged meeting with Adams and King's termination, it is reasonable to conclude that "the plaintiff would have a fair chance" of demonstrating that she was terminated in retaliation for the leave she took. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1573 (7th Cir.1989). As the Supreme Court stated in *Hicks*, "[t]he fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." 509 U.S. at 511, 113 S.Ct. 2742. This is such a case.

■ When a record contains evidence demonstrating not only that the legitimate, non-discriminatory reason for the adverse employment decision may be false, but also that the explanation may be mendacious, the grant of an employer's motion for summary judgment is inappropriate. This is especially so when an employer does not offer any other credible explanation for the decision at issue. While it is true that Adams denies the version of events presented by King in the affidavits and her deposition, this should not have doomed King's complaint at this stage in the proceedings. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. In the instant case, it is within reason and could be concluded that PTG's proffered reason for King's termination was false and that the real reason for the adverse employment decision at issue was in fact discrimination in retaliation for King's use of leave pursuant to the FMLA.

## CONCLUSION

Because we find a genuine issue of material fact exists with regard to whether PTG terminated King's employment in violation of the FMLA, we REVERSE the District Court's decision granting summary judgment and REMAND this case for further proceedings.