In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-2433

PETER J. KAUFFMAN,

*Plaintiff-Appellant,*

*v.*

FEDERAL EXPRESS CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 02-4068—**Michael M. Mihm**, *Judge.*

ARGUED FEBRUARY 7, 2005—DECIDED OCTOBER 18, 2005

Before ROVNER, WILLIAMS, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* Peter Kauffman came down with bronchitis and missed three days of work. When he returned to his job and asked that his absence be excused under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-54, his employer, Federal Express Corporation (FedEx), denied the request and then fired him because the lost days pulled his overall attendance record below company standards. Kauffman sued, claiming that FedEx, by terminating him, interfered with his substantive rights and entitlements under the FMLA and violated the Act's anti-discrimination (or anti-retaliation) provisions. The district court granted summary judgment for FedEx.

We vacate and remand. In short, this case turns on whether Kauffman was entitled to FMLA leave on the missed days and whether, in deciding that question, the district court misread a medical certification Kauffman submitted to FedEx to establish his entitlement.

## I.

The essential facts are undisputed. For nearly 18 years Kauffman delivered packages for FedEx in East Moline, Illinois. By the end of December 2001 he had accumulated two recent disciplinary "strikes," one for unprofessional conduct and the other for violating the company's vehicle accident policy. FedEx policy allows management to terminate an employee who incurs three strikes in a 12-month period.

Then, on January 2, 3, and 4, 2002, Kauffman called in sick. Because he was not scheduled to work on January 5 or 6, he returned to work on January 7. That morning before his shift began, Kauffman encountered his immediate supervisor, Tim Crownover. He gave the supervisor a note dated January 2 from his physician, David Seitz. The note stated that Kauffman "may return to work/school on: 1-3-02." After receiving the note, Crownover recommended that Kauffman apply for FMLA leave and gave Kauffman what the supervisor said were the forms necessary to submit a FMLA request, which Crownover told Kauffman had to be done within 15 days. Later that same day, Crownover realized that the paperwork he handed Kauffman was incorrect, and so he slipped the right forms into Kauffman's office mailbox. Kauffman received those forms at six o'clock the evening of January 7. Qualifying for FMLA leave was critical to Kauffman under FedEx's "no fault" attendance policy; unless his three missed days were excused, he would earn a third strike for letting his attendance rate dip below

the 96.9% minimum during a 12-month period.

The next day, January 8, Kauffman kept a scheduled appointment with Dr. Seitz and asked him to complete the form "Certification of Health Care Provider" created by FedEx for FMLA requests. The form, similar to the model form WH-380 promulgated by the Department of Labor, *see* 29 C.F.R. § 825.306(a) & (b), directs the provider to categorize the employee's condition by choosing among a series of check boxes. The doctor, however, did not check any box but instead wrote "bronchitis" on a line next to the box corresponding to the following generic description: "Incapacity of more than three (3) days due to a serious health condition that also involves treatment two or more times by a health care provider (HCP) or treatment by a HCP on one occasion which results in a regimen of continuing treatment." The doctor also noted that a second appointment had been necessary on January 8, that Kauffman could not work at all, and that leave was required for Kauffman's absences. Finally, in response to a form question directing the provider to state both the "date the condition commenced" and "the probable duration of the condition," Dr. Seitz wrote simply "1-1-2002." Kauffman placed the completed form on his supervisor's desk.

On the morning of January 22, the fifteenth day after giving Kauffman the FMLA paperwork, Crownover asked Kauffman for the completed "Certification of Health Care Provider." Kauffman replied that he "turned it in" earlier and offered to go home and get the supervisor another copy or have the doctor fax one, but Crownover refused to wait and instead fired Kauffman on the spot. Crownover told Kauffman that his FMLA leave request was being denied as untimely because he did not have the certification in hand, and that as a consequence of the unexcused absence Kauffman would incur a third strike, this time for poor attendance. Crownover then handed Kauffman two letters dated that day, one confirming the third strike based

on Kauffman's attendance falling below the minimum, and the second terminating his employment because he now had three strikes within a 12-month period.

Kauffman appealed his termination through FedEx's internal procedures. During this process FedEx abandoned its position that Kauffman's certification was untimely. Now, however, the company asserted that the certification was inadequate and thus upheld the denial of FMLA leave and consequently the third strike and termination. Kauffman replied to the new basis for dismissal with an addendum from Dr. Seitz clarifying that his illness continued from January 2 through January 8 and required his absence from work. FedEx refused to consider the addendum. Having lost his appeal, Kauffman filed suit alleging that FedEx interfered with his rights under the FMLA by firing him instead of granting leave due. Kauffman also alleged "discrimination," asserting that FedEx fired him "because he exercised his right to seek FMLA leave."

FedEx moved for summary judgment. Despite having admitted in the internal appeal that Kauffman's FMLA paperwork was not untimely, FedEx argued in its summary judgment motion that it gave Kauffman 15 days to submit his paperwork but he failed to meet the deadline. Without record citation, FedEx explained that its policy implementing the 15-day rule was to require the return of forms no more than 360 hours (15 multiplied by 24 hours) after they were given to the employee. Crownover gave the paperwork to Kauffman at 7:30 on the morning of January 7, so the company expected the forms back by the same time on January 22. FedEx argued alternatively that the certification Kauffman submitted was inadequate to qualify him for FMLA leave. The company insisted that Kauffman produced no evidence of discrimination or retaliatory discharge.

In response to FedEx's motion, Kauffman submitted his

own testimony that he left the paperwork in Crownover's office on January 10, and he also produced verification that his lawyer sent a copy of the required paperwork via facsimile a little after five o'clock on January 22. More to the point, Kauffman adduced evidence that FedEx itself determined that he was on time with his paperwork. For example, a document prepared by a FedEx human resources employee, James A. Mika, summarizes Kauffman's internal appeal and concludes that "the decision to terminate Peter was based incorrectly on the time frame in which Peter had to submit the certificate of health care provider form." Another e-mail distributed among FedEx managers states that FedEx considered reinstating Kauffman before deciding to uphold the termination on alternate grounds.

Additionally, Kauffman submitted other e-mails exchanged between station managers that show he was disliked and that managers conspired to use his absence as an excuse to fire him. As to the first point, one e-mail characterized Kauffman as an argumentative employee with a propensity for "nitpicking, badgering & finger pointing . . . and for making non-factual, false, malicious, slanderous statements." As to the second, correspondence showed that when Kauffman turned up missing for work, managers agreed to provide him with paperwork to apply for FMLA leave. But they anticipated that he would be late with the paperwork and planned to terminate him should that occur. The managers discussed the importance of following the FMLA strictly by "dotting their i's and crossing their t's" to ensure that the firing would stick.

When granting summary judgment for FedEx, the district court focused on the document that lies at the heart of the case, the health-care provider's certification that Kauffman provided to FedEx to establish his entitlement to FMLA leave. The court reasoned that the certification establishes that Kauffman did not have a serious health condition

qualifying him for leave. According to the court, Dr. Seitz—by replying with just the single date "1-1-02" to the form's compound instruction to "[s]tate the approximate date the condition commenced and the probable duration of the condition"—was certifying that Kauffman had been incapacitated for only one day, not the more than three days required by the statute. Any other reading, the court explained, would be inconsistent with the note from the doctor's office stating that Kauffman could return to work on January 3. Moreover, the district court refused to consider the amended certificate from Dr. Seitz that Kauffman submitted because FedEx did not have it when making its employment decision. And although acknowledging that it was bound to find that Kauffman had timely submitted his paperwork, the court reasoned that any error FedEx made in this regard was harmless since Kauffman did not qualify for leave under the FMLA.

Next, the court decided that the e-mails by Kauffman's superiors, although revealing an intent to fire him should he fail to submit FMLA forms, could not prove discriminatory animus for taking FMLA leave. The court explained that the e-mails evidenced dislike for Kauffman, but there was no indication that the dislike was on account of opposition to the company's FMLA practices or because of taking leave. The court concluded that there was nothing wrong with an employer firing an employee for absences if the employee is not entitled to FMLA leave, so the "real question" in the case was simply whether Kauffman was entitled to that leave. Since in the court's view he was not, that was the end of the matter.

## II.

On appeal Kauffman once again maintains that, by terminating him, FedEx interfered with his substantive rights under the FMLA and discriminated against him for exercising those rights. Under the FMLA, eligible employees are entitled to 12 weeks unpaid leave per year for various reasons, including a "serious health condition" rendering the employee unable to perform his or her job. 29 U.S.C. § 2612(a)(1)(D); *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003); *Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998). To ensure this entitlement, the Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided," 29 U.S.C. § 2615(a)(1); *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002); *King v. Preferred Tech. Group*, 166 F.3d 887, 891 (7th Cir. 1999), including the right to reinstatement upon return from leave, 29 U.S.C. § 2614(a); *King*, 166 F.3d at 891. In addition to these substantive provisions, the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Similarly, the Act makes it unlawful for any employer to "discharge" or "discriminate" against anyone for taking part in proceedings or inquiries under FMLA. *Id.* § 2615(b). We have construed these last provisions to create a cause of action for retaliation. *See id.* § 2615(a)(1), (2); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004); *King*, 166 F.3d at 891.

With these rules in mind, we first clarify that Kauffman's case is really about interference with his substantive rights, not discrimination or retaliation. A claim under the FMLA for wrongful termination can be brought under either a discrimination/retaliation or interference/entitlement theory; the difference is that the first type of claim requires

proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960-61 (10th Cir. 2002); *Bachelder v. Am. West. Airlines*, 259 F.3d 1112, 1122-26 (9th Cir. 2001); *King*, 166 F.3d at 891; *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997). Here, Kauffman points to no evidence of discriminatory or retaliatory animus. Viewing the record in the light most favorable to Kauffman, the nonmoving party, FedEx managers wanted to get rid of him because they thought he was argumentative and a troublemaker, so they pounced on a chance to fire him. But they did so *in spite of* his rights under the FMLA, not *because* he asserted those rights. In other words, they did not seek to punish him for exercising rights or opposing an unlawful procedure; they did not even treat him differently than someone not entitled to FMLA leave. *Cf. Diaz*, 131 F.3d at 713. But whether Kauffman produced evidence of discriminatory or retaliatory animus is "not fatal" to his case. *See Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d at 960-61; *Diaz*, 131 F.3d at 713. What is at stake here is a claim for wrongful discharge, and Kauffman may recover damages or equitable relief for that claim under 29 U.S.C. § 2617[1] on either an interference/entitlement or a discrimination/retaliation theory. *See Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d at 960-61.

Indeed, when we focus on the proper inquiry in this case, *i.e.*, whether FedEx "respected" Kauffman's "entitlements,"

---

[1] Damages and relief under § 2617 for violations of section § 2615 include: lost wages, other compensatory damages, interest, liquidated damages, equitable relief such as reinstatement, and in some cases, attorneys' fees. 29 U.S.C. § 2617(a)(1), (3). Section 2617 draws no distinction between interference/ entitlement and discrimination/retaliation claims.

*see Diaz*, 131 F.3d at 713, we conclude that Kauffman produced enough evidence to press forward with his case and win it. Here, FedEx concedes that it fired Kauffman for missing work in January. Since it is undisputed that FedEx fired Kauffman because he was absent, the outcome turns on the narrow question of Kauffman's entitlement to FMLA leave. *See Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1018 (7th Cir. 2000). Furthermore, both parties agree that entitlement here—since there is no question that FedEx is a covered employer or Kauffman an eligible employee—depends only on the adequacy of Kauffman's certification of a serious health condition qualifying for leave, that is, whether he turned his paperwork in on time and whether that paperwork was sufficient to certify a serious health condition qualifying for FMLA leave.

As to the first point, FedEx inexplicably has persisted throughout this litigation in arguing that Kauffman did not turn his paperwork in on time. Yet the argument is frivolous. Because Kauffman claimed an unforeseeable, serious health condition, he had "15 calendar days after the employer's request" to submit certification from his physician. *See* 29 C.F.R. § 825.305(b); *Rager v. Dade Behring, Inc.*, 210 F.3d 776, 777 (7th Cir. 2000) (explaining that an employer may require certification, but if the health condition was "unforeseeable," the employee must have "at least 15 calendar days in which to submit it"). Indeed, FedEx itself determined during the internal appeal that Kauffman had submitted the paperwork in that time frame. For his part Kauffman testified that he turned in the paperwork on January 10, which is not seriously in dispute and in any event is enough to survive summary judgment. But what seals the matter is that FedEx admits that Crownover refused to accept another form on January 22 *before* firing Kauffman and concedes that Kauffman's lawyer faxed a copy of the certification to Crownover just after five that afternoon. The regulation states that Kauffman was

entitled to "15 calendar days after the employer's request," 29 C.F.R. § 825.305(b), so he had the full day of January 22 to submit the paperwork. Even if we were to accept FedEx's rule that he had just 360 hours after receiving the forms, Kauffman did not receive the correct form until six o'clock on January 7 and thus had until six o'clock on January 22. Since Crownover was the one who demanded the form, he was unquestionably the correct recipient.

Thus, we turn to the central issue in this case, whether Kauffman's doctor's certification was adequate to establish his entitlement to FMLA leave. Here, Kauffman argues that the district court erred in reading the certification because the doctor did certify an incapacity lasting more than three days owing to a serious health condition requiring at least two treatments. Even if the certification was incomplete, Kauffman argues, FedEx was required by regulations to give him an opportunity to cure it.

A "serious health condition" includes an illness resulting in more than three days of incapacity and requiring treatment at least two times by a health-care provider. 29 U.S.C. § 2611(11); 29 C.F.R. § 825.114(a)(2)(i)(A); *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir. 1997). Therefore, when an employee requests leave for such a condition, the employer may request certification by the employee's health-care provider. 29 U.S.C. § 2613(a); *Rager*, 210 F.3d at 777. That certification is sufficient if it provides the date the serious health condition began, its probable duration, relevant medical facts, and a statement that the employee is unable to work. 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306. Under the regulations, if the employer "finds a certification incomplete," it must "provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(d); *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337-38 (6th Cir. 2005); *Miller v. AT & T Corp.*, 250 F.3d 820, 836 (4th Cir. 2001).

Here, we cannot agree with the district court that Kauffman's papers amounted to a "negative certification," that is, an affirmative statement by Dr. Seitz that Kauffman's incapacity lasted less than three days. Although Dr. Seitz did not put a checkmark in any of the boxes to categorize Kauffman's condition, he did write the word "bronchitis" next to the box for "incapacity of more than three (3) days due to a serious health condition that also involves treatment two or more times by a health care provider (HCP)." We will not split hairs over the obvious. Writing "bronchitis" next to the box was the equivalent of checking it. Therefore, the doctor did certify that Kauffman had bronchitis resulting in an incapacity of more than three days, requiring at least two doctor's visits. As for the doctor's response, "1-1-2002," to the question about when the condition began and how long it would probably last, the only logical conclusion is that the doctor answered when the condition commenced but omitted its duration. In fact, contrary to the district court's view, this reading is the only one consistent with the note that Kauffman gave Crownover on his return. As mentioned above, that note was dated January 2 and stated that Kauffman could return to work on January 3, so the doctor cannot have meant that the condition began and ended on January 1. Moreover, if the condition began and ended on January 1, which FedEx admitted at oral argument was a holiday when Kauffman did not have to work, why even fill out the form? In any event the district court was wrong to conclude that FedEx could rely on the note—written prior to the certification form—as a "negative certification" to FedEx that the condition did not last at least three days. The doctor wrote that note without the advantage of a few more days' knowledge of the course of the illness. So his later, fully informed certification that the incapacity lasted for more than three calendar days obviates any seeming conflict between the two documents. After all, "nothing in the Act or regulations limits the employee's ability to

produce a medical opinion that contradicts a prior negative certification originally provided by the employee." *Stoops*, 141 F.3d at 313. Considering that Crownover himself suggested Kauffman apply for FMLA leave upon receiving the January 2 note, FedEx could hardly turn around and say that it had relied on the note as a "negative certification."

More to the point, the doctor's certification provides enough information to satisfy the statute. That form tells us that Kauffman had bronchitis that started on January 1, incapacitated him for more than three calendar days, required two doctor's visits, and kept him from being able to work. No matter what form is used, this information is the only information required for a sufficient certification. *See* 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306(b). True, we do not know the incapacity's exact duration, at least not until we look at the doctor's addendum that Kauffman submitted and FedEx refused during his appeal. But all we really need to know is that the incapacity, bronchitis, lasted for more than three calendar days. In any event, a failure to include duration in this case means at best that the form was incomplete. FedEx could not win its case by arguing that the form was incomplete; in that event, FedEx would have been required to, but did not, notify Kauffman and give him the opportunity to cure the deficiency, *see* 29 C.F.R. § 825.305(d); *Sorrell*, 395 F.3d at 336-37; *Miller*, 250 F.3d at 836. Indeed, when FedEx belatedly challenged Kauffman's certification, it refused to accept his addendum, so any argument by FedEx that the certification was incomplete would simply spotlight an even clearer case of liability.

Accordingly, we vacate the judgment of the district court and remand for proceedings consistent with this opinion. It is for the district court to determine what material issues, if any, remain for trial.

VACATED AND REMANDED.

A true Copy:

    Teste:

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*