In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2460

RICHARD L. DARST, as Trustee for the
Bankruptcy Estate of KRZYSZTOF
CHALIMONIUK,

*Plaintiff-Appellant*,

*v.*

INTERSTATE BRANDS CORPORATION
and TONIA GORDON,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP01-0788-C T/K—**John Daniel Tinder,** *Judge*.

———————

ARGUED MARCH 28, 2007—DECIDED JANUARY 11, 2008

———————

Before POSNER, ROVNER and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge*. Krzysztof Chalimoniuk[1] worked
for Interstate Brands Corporation ("IBC"), a manufac-

———

[1] During the course of this litigation, Chalimoniuk filed a
Chapter 7 bankruptcy proceeding in the United States Bank-
ruptcy Court for the Southern District of Indiana. His claim
against the defendants became part of the bankruptcy estate,
and Richard L. Darst, as trustee for that estate, has continued
to prosecute the claim on behalf of the estate.

turer of baked goods, for fifteen years before he was terminated for excessive absenteeism. Chalimoniuk is an alcoholic and he sought treatment for that condition in his final days at IBC. He requested leave under the Family and Medical Leave Act ("FMLA") for an absence extending from July 29, 2000 to August 14, 2000.[2] From August 4 through August 11, he was hospitalized for treatment for alcohol dependence and acute withdrawal syndrome. On August 15, when he returned to work, he was terminated for absenteeism. The district court agreed with IBC that Chalimoniuk could not show he was entitled to FMLA leave for July 31, August 2 and August 3, all days that he was scheduled to work. His absences for those three days, combined with absences he had accumulated earlier, put him over the limit for absenteeism under IBC's attendance policy. Because he lacks evidence establishing his entitlement to FMLA leave for those three days, we affirm.

## I.

IBC has a points-based system for tracking and disciplining employees for absenteeism. A certain number of points are assessed to the employee based on the nature of the infraction. For example, an employee who is absent with an advanced call to IBC earns three points for each day of absence. An employee who is absent without calling in nets four points per day. On one end of the spectrum, a late return from lunch merits one point; on the other end, a failure to complete a shift with no note from a doctor results in a six-point assessment. The accumulation of twelve points leads to a written warning. Eighteen points warrant a written reprimand. Normally,

---

[2] All dates hereafter are in 2000 unless otherwise specified.

twenty-four or more points result in discharge. For Chalimoniuk, for reasons that are not relevant here, the cut-off for discharge was thirty-two points. No points are accumulated under IBC's policy for an absence covered by FMLA. Prior to July 29, Chalimoniuk had accumulated twenty-three points.

Late in the evening of Friday, July 28, Chalimoniuk, who had been wrestling with alcoholism for some time, stopped on his way home from work and purchased a large quantity of alcohol. By his own account, on Friday night, Saturday and for part of Sunday, he drank enough alcohol to lose his memory for two or three days.[3] Chalimoniuk was scheduled to work in the Muffins Department at IBC on July 31 (Monday), August 2 (Wednesday), and August 3 (Thursday). On July 29, when his wife realized he had relapsed, she called Fairbanks Hospital to see if she could bring her husband in for treatment. Construing the evidence in favor of Chalimoniuk as we must on summary judgment, on that same day, Chalimoniuk signed a consent for disclosure, authorizing the hospital and his insurance company to share with each other medical information regarding his condition. On Tuesday, August 1, Chalimoniuk called his physician's office but the office was closed that day. On Wednesday, August 2, he called his doctor's office again, this time speaking to a nurse or receptionist who spoke to the doctor and referred Chalimoniuk to Fairbanks Hospital. On that same day, Chalimoniuk called Fairbanks Hospital and his insurance company to arrange his admission to the hospital. Chalimoniuk described the call to Fairbanks

---

[3] At his deposition, Chalimoniuk testified, "I don't remember really almost anything. It's some kind of things which confused me. I don't know where I was between say like the Saturday and probably Tuesday. I was very confused what I was doing, where I was, what I did, how I did." R. 51, Tab A, at 66.

as a five to ten minute conversation to "[g]et some information, set [an] appointment." R. 51, Ex. A, at 146. A scheduled August 3 admission was moved to August 4 because of delays in obtaining insurance approval. On August 4, Chalimoniuk was admitted to Fairbanks for inpatient treatment of his alcoholism. He remained there through August 10, completing his treatment.

At some point in that process, Chalimoniuk requested FMLA forms from IBC. The company gave the "Certification of Health Care Provider" form to his wife on August 7, and he returned the completed form (hereafter "Certification") to IBC's assistant human resources manager, Tonia Gordon, on August 11. IBC's three-page form closely tracks form WH-380, a sample form provided by the Department of Labor that meets the minimum requirements under the applicable FMLA regulations. The physician who treated Chalimoniuk at Fairbanks Hospital, Dr. Stephen Pfeifer, completed the Certification. In particular, Dr. Pfeifer indicated that Chalimoniuk's "Serious Health Condition" involved "Absence Plus Treatment."[4] Absence Plus Treatment is defined, in relevant part, as a period of incapacity of more than three consecutive calendar days (including any subsequent treatment or incapacity relating to the same condition), that also

---

[4] "Serious Health Condition" is a defined term in the FMLA. Department of Labor regulations and form WH-380 define Serious Health Condition as an illness, injury, impairment, or physical or mental condition that involves, among other things, Hospital Care, Absence Plus Treatment, Pregnancy, Chronic Conditions Requiring Treatments, Permanent/Long-term Conditions Requiring Supervision, and Multiple Treatments (Non-Chronic Conditions). *See* 29 C.F.R. § 825.114; Dept. of Labor Form WH-380. Each of these categories is further defined and we will address only those parts of the regulations that relate to Chalimoniuk.

involves (1) Treatment two or more times by a health care provider; or (2) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of a health care provider. 29 C.F.R. § 825.306; 29 C.F.R. pt. 825, App. B; U.S. Dept. of Labor Form WH-380, Rev'd December 1999. In another area of the Certification, where Dr. Pfeifer was asked to list the medical facts which supported the Certification, including a brief statement as to how those medical facts meet the criteria of the category he selected, he wrote, "Alcohol Dependence and Acute Withdrawal Syndrome. Hospitalized for W/D symptoms and treated successfully. Now sober and involved in counseling [and] AA." On the line asking for the "approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity, if different)," Dr. Pfeifer wrote "7/29 - 8/11. Return 8/14."

Also on August 11, Chalimoniuk submitted a Health Insurance Claim form to Gordon. This Mutual of Omaha form was required for an employee to be paid for an absence due to disability. Part of the required information on this form was the "Attending Physician's Statement." This part of the form was completed by Dr. Timothy Kelly, another physician affiliated with Fairbanks Hospital, who listed the disability as "Alcoholism 303.90" and stated that the "Dates of services" were "7.29.00 to 8.10.00."[5] Because a different physician had completed this form and because the dates of services varied slightly from the dates given on the Certification, Gordon contacted the

---

[5] The number 303.90 is the code for alcohol dependence in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, commonly referred to as the DSM-IV. The DSM-IV is the most widely used psychiatric reference book in the world, according to its publisher, the American Psychiatric Association.

patient records department at Fairbanks Hospital to clarify the dates that Chalimoniuk was at Fairbanks. A clerk at Fairbanks told her that Chalimoniuk had been admitted to the hospital on August 4. Gordon then contacted the Department of Labor to determine what part of Chalimoniuk's absence was covered by the FMLA. The Department of Labor referred her to the regulation on substance abuse. Subsection (d) of the relevant regulation provides:

> Substance abuse may be a serious health condition if the conditions of this section are met. However, FMLA leave may only be taken for treatment for substance abuse by a health care provider or by a provider of health care services on referral by a health care provider. On the other hand, absence because of the employee's use of the substance, rather than for treatment, does not qualify for FMLA leave.

29 C.F.R. § 825.114(d). Based on her discussion with the Department of Labor, her call to the records clerk and her reading of the regulation, Gordon concluded that Chalimoniuk's absences on July 29, August 2 and August 3 were not covered by the FMLA because those absences were not for treatment as that term is defined by the FMLA. Under company policy, Chalimoniuk accrued ten points for his absences on those days, resulting in thirty-three total points.

When Chalimoniuk returned to IBC on August 15, he met with defendant Tonia Gordon, a union representative, the head of the Cake Department (the Muffins Department was part of the Cake Department), and an assistant production manager. At this meeting, Chalimoniuk confirmed that he entered the hospital on August 4, and Gordon told him that the company was discharging him for exceeding the allowable number of points under its absenteeism policy. The parties dispute

whether Chalimoniuk was intoxicated on July 29, August 2, and August 3, but there is no disagreement over two operative facts: Chalimoniuk was absent from work on those days and he did not commence inpatient treatment for alcoholism at Fairbanks Hospital until August 4. Chalimoniuk sued IBC and Gordon, alleging that his termination constituted a wrongful denial of FMLA benefits in violation of 29 U.S.C. § 2615(a)(1).[6] The district court found that Chalimoniuk lacked evidence that he was in treatment for alcoholism on July 29, August 2 and August 3, and therefore granted summary judgment in favor of the defendants. Chalimoniuk appeals.

## II.

On appeal, Chalimoniuk argues that the defendants should be estopped from challenging the sufficiency of his medical Certification because they did not do so at the time he submitted it. He contends that the defendants also should not be permitted to contest the validity of his Certification after ignoring the procedures set forth in 29 U.S.C. §§ 2613(c)-(d). Chalimoniuk asserts that summary judgment was entered improperly because there are disputed issues of material fact regarding whether he received treatment on July 31, August 2 or August 3. Our review is de novo. *Global Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 981 (7th Cir. 2004); *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th

---

[6] In his complaint, Chalimoniuk also alleged that the defendants discriminated against him for asserting his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2). He also asserted state law claims for breach of contract and for equitable relief. The district court granted summary judgment in favor of the defendants on those claims, which are not at issue in this appeal.

Cir. 2002); *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Global Relief*, 390 F.3d at 981. The applicable substantive law will dictate which facts are material. *Global Relief*, 390 F.3d at 981; *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996).

The substantive law at issue is the FMLA. Under the FMLA, eligible employees are entitled to up to twelve weeks of unpaid leave per year for absence due to, among other things, a "Serious Health Condition" that renders the employee unable to perform the functions of his or her job. 29 U.S.C. § 2612(a)(1)(D); *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). To ensure the entitlement, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1); *Kauffman*, 426 F.3d at 884. When an employee alleges a deprivation of the substantive guarantees of the FMLA, the employee must establish, by a preponderance of the evidence, an entitlement to the disputed leave. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1017 (7th Cir. 2000); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999); *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997). Because the district court resolved the case on a motion for summary judgment, Chalimoniuk need only raise a genuine issue of material fact regarding his entitlement to FMLA leave on the relevant dates.

A Serious Health Condition is defined as an illness, injury, impairment, or physical or mental condition that

involves either (1) inpatient care in a hospital, hospice, or residential medical facility; or (2) continuing treatment by a healthcare provider. 29 U.S.C. § 2611(11). Although the statute itself does not specifically address whether alcoholism or substance abuse constitute serious health conditions, Department of Labor regulations that implement the statute provide the answer. As we noted above, substance abuse may be a Serious Health Condition under certain conditions but FMLA leave may be taken only for treatment for substance abuse. 29 C.F.R. §825.114(d). On the other hand, absence because of the employee's use of the substance, rather than for treatment, does not qualify for FMLA leave. Under this regulation, Chalimoniuk was entitled to FMLA leave only for treatment for substance abuse. Because of the final sentence in the regulation, the parties argue over whether Chalimoniuk was intoxicated on July 31, August 2 or August 3, but we will assume for the purposes of summary judgment that he was not intoxicated on those days. Even if he was sober on those days, however, he has provided no explanation for his absence that would excuse the absence under IBC's point system except that he was in treatment for alcoholism. We turn, therefore, to whether Chalimoniuk has enough evidence to create a genuine issue of fact regarding whether he was in treatment for alcoholism on those days.

Chalimoniuk concedes he was not in inpatient treatment at Fairbanks Hospital for alcoholism until August 4. The question, then, is whether Chalimoniuk was in inpatient treatment at some other facility, or outpatient treatment on July 31, August 2 and August 3 that rendered him unable to work on those days. Chalimoniuk contends that his medical Certification either (1) adequately certified that he was in treatment for alcoholism from July 29 through August 11, or (2) was incomplete or invalid, creating a duty for his employer to alert him to

the deficiency and allow him an opportunity to cure it. As we noted above, the second question on the medical Certification directs the healthcare provider completing the certification to indicate whether the patient's condition qualifies as a Serious Health Condition under the FMLA, and if so, to indicate which category applies. The form explains that a "Serious Health Condition" means an illness, injury, impairment, or physical or mental condition that involves one of six scenarios. The first choice is hospital care, and Dr. Pfeifer did not check that selection. Instead he checked the second category, titled "Absence Plus Treatment." To meet that category, the illness must involve, in relevant part, a period of incapacity of more than three consecutive days that also involves (1) treatment two or more times by a health care provider or (2) treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider. The form specifies that "Treatment" includes "examinations to determine if a serious health condition exists and evaluation of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations." A "regimen of continuing treatment" includes a course of prescription medication or therapy requiring special equipment but does not include taking over-the-counter medications or any activities that can be initiated without a visit to a health care provider. Finally, the form provides that "incapacity," for the purposes of FMLA, is defined as, among other things, an inability to work due to a serious health condition, treatment therefor, or recovery therefrom. In the case of substance abuse, the regulations provide that the relevant period of incapacity is the time the employee is unable to work due to treatment.

The form does not contemplate the special issues relating to substance abuse and does not alert the health care

provider completing the form that a worker suffering from alcohol or substance addiction is entitled to FMLA leave only for incapacity caused by treatment and not for the incapacity caused by the addiction itself. Thus the form requests the date the condition commenced, the probable duration of the condition, and the probable duration of the patient's incapacity if that period is different from the duration of the condition. The person filling out the form would have to know from the regulations that, in the case of alcoholism, the relevant period of incapacity is the treatment period, which may well differ from the probable duration of the condition itself.[7] This is the area of the form where Dr. Pfeifer should have listed the dates of treatment for alcoholism. Dr. Pfeifer indicated that the condition was alcohol dependence and acute withdrawal syndrome, with hospitalization for treatment of the withdrawal symptoms, and as we noted above, he listed the dates requested as July 29 through August 11, with an anticipated return date of August 14.

When Gordon saw that the insurance form was completed by a different doctor and used slightly different dates, she called Fairbanks Hospital for clarification. The regulations did not permit Gordon to take this action. The regulations provide that when an employee submits a complete certification, signed by the health care provider,

---

[7] Although we realize that the form cannot provide for every contingency, an update to include the special requirements for substance abuse, the sole condition treated differently from every other "Serious Health Condition" under the FMLA, would be helpful to employees and employers alike. The physicians who complete the forms are undoubtedly less familiar with the details of the regulations than are the lawyers dissecting them after the fact.

> the employer may not request additional information from the employee's health care provider. However, a health care provider representing the employer may contact the employee's health care provider, with the employee's permission, for purposes of clarification and authenticity of the medical certification.

29 C.F.R. § 825.307; *Harrell v. U.S. Postal Serv.*, 445 F.3d 913, 928-29 (7th Cir.); *cert. denied*, 127 S. Ct. 845 (2006). Gordon did not request consent from Chalimoniuk, Chalimoniuk did not give his consent, and Gordon was not a "health care provider representing the employer." Although other statutes may provide recourse to Chalimoniuk for this unauthorized contact with his health care provider, the FMLA provides no remedy unless the action interfered with, restrained or denied Chalimoniuk's exercise of his rights under the FMLA. *See* 29 U.S.C. §§ 2615(a)(1), 2617; *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (section 2617 affords no relief unless the employee has been prejudiced by the violation); *Harrell*, 445 F.3d at 928-29 (same). Of course, there could be no interference if Chalimoniuk had no right to FMLA leave on the three days in question.

The regulations also provide that, when an employer finds a certification incomplete, the employer must advise the employee of this fact and provide the employee a reasonable opportunity to cure any deficiency in the certification. 29 C.F.R. § 825.305(d). Chalimoniuk complains that IBC and Gordon failed to advise him that his Certification was incomplete and failed to give him an opportunity to cure any deficiency. IBC contends that the Certification was not incomplete, however. Dr. Pfeifer supplied all of the required information. IBC and Gordon denied FMLA leave not because the Certification was incomplete but because they believed it was inaccurate; they believed that the Certification overstated the time period that Chalimoniuk was in treatment. But

even if IBC was obliged to advise Chalimoniuk that his certification was incomplete, there was no harm caused by IBC's breach of this obligation unless Chalimoniuk would have been able to cure the deficiency in a manner that entitled him to FMLA leave. This scenario is distinguishable from the facts presented to us in *Kauffman*, the case on which Chalimoniuk relies. In *Kauffman*, the physician filling out the form indicated that the employee was incapacitated for more than three days but then listed a single date in response to the question regarding the date the condition commenced and the probable duration of the condition. The employee was able to demonstrate that, had he been given the opportunity to cure this deficiency, he could have shown that he was in fact incapacitated for more than three days and was actually entitled to FMLA leave. Thus, the employer's breach of the obligation to notify him of the deficiency and offer a chance to cure it resulted in the loss of FMLA leave to which he was entitled. 426 F.3d at 886-87. Because (as we shall see) Chalimoniuk cannot demonstrate that he was actually entitled to FMLA leave, IBC's breach of its duty to offer him an opportunity to cure deficiencies caused him no harm, and he may not recover for that breach under the FMLA. *Ragsdale*, 535 U.S. at 89; *Harrell*, 445 F.3d at 928-29.

Chalimoniuk next points out that the regulations provide that an employer who "has reason to doubt the validity of a medical certification may require the employee to obtain a second opinion at the employer's expense." 29 C.F.R. § 825.307(a)(2). *See also* 29 U.S.C. § 2613(c) ("In any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) of this section for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title, the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second

health care provider designated or approved by the employer concerning any information certified under subsection (b) of this section for such leave."). Chalimoniuk contends that because the defendants failed to require him to provide a second opinion, they may not now contest the validity or accuracy of his Certification. The few courts to analyze the language of that provision have found that the request for a second opinion is permissive, not mandatory. *See Rhoads v. FDIC*, 257 F.3d 373, 385-86 (4th Cir. 2001) (because the term "may" is permissive, the plain language of the FMLA does not suggest that an employer must pursue these procedures or be forever foreclosed from challenging whether an employee suffered from a serious health condition); *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 860 (8th Cir. 2000) (same). We need not decide whether IBC was required to ask Chalimoniuk for a second opinion because the FMLA provides no remedy for the possible violation unless the action interfered with, restrained or denied Chalimoniuk's exercise of his rights under the FMLA. *See* 29 U.S.C. §§ 2615(a)(1), 2617; *Ragsdale*, 535 U.S. at 89; *Harrell*, 445 F.3d at 928-29. Of course, an employer who bypasses this step risks denying FMLA leave to an employee who is entitled to the leave, rendering the employer liable for lost wages, benefits, interest, attorney's fees, costs and other damages as provided by 29 U.S.C. § 2617. At the time IBC denied FMLA leave to Chalimoniuk, the company believed he was not receiving inpatient treatment at Fairbanks Hospital during the three days in question, but as far as we can tell from the record, the company did not know and did not inquire whether Chalimoniuk was in some other treatment program during that time, or at some other facility. As we shall see, the company was correct that Chalimoniuk was not in treatment during those three days.

The only remaining question is whether Chalimoniuk can demonstrate a genuine issue regarding treatment on the three days in question, treatment that rendered him unable to work. Chalimoniuk's only evidence of treatment is Dr. Pfeifer's Certification. Dr. Pfeifer confirmed that Chalimoniuk received inpatient treatment at Fairbanks from August 4 until August 11. He produced no records and had no recollection of treating Chalimoniuk prior to that time. Chalimoniuk provided an affidavit from Dr. Pfeifer stating the doctor's belief that "treatment" for alcoholism begins when the patient takes the first step towards seeking professional help. According to Dr. Pfeifer, this includes the first phone call to the health care provider seeking evaluation, treatment or referral. Based on his training and experience as a medical doctor, Dr. Pfeifer averred that Chalimoniuk's treatment therefore began on July 29, when he first contacted his physician's office. Under the FMLA, however, "treatment" is a defined term that does not include actions such as calling to make an appointment. Treatment would include examinations to determine if a serious health condition exists and evaluation of the condition. But Chalimoniuk has produced no evidence that he was being examined or evaluated on July 29, August 2 or August 3. Treatment does not include "any activities that can be initiated without a visit to a health care provider." Chalimoniuk complains that memories have faded since the time of his termination, that his doctors could have testified regarding his treatment on those days if he had known closer to the time that the company was challenging the fact of treatment on the days in question.[8] But Chalimoniuk knew as of

---

[8] As evidence that he was being treated for alcoholism on the three relevant days, Chalimoniuk also points to the insurance form signed by Dr. Kelly. Recall that this form listed the "Dates

(continued...)

August 15, days after his treatment ended, that the company was denying him FMLA leave for all of the days he was absent except the period of his hospitalization. He had ample opportunities to preserve any relevant evidence. Thus, because Chalimoniuk has produced no evidence that he received any treatment as that term is defined by the FMLA on the days in question, he was not entitled to FMLA leave on those dates. Because he had exceeded the number of points allowable under IBC's absenteeism policy, the defendants were free to terminate his employment without running afoul of the FMLA.

AFFIRMED.

---

[8]  (...continued)
of services" as "7.29.00 to 8.10.00." The record contains no medical records regarding treatment by Dr. Kelly (or any other health care provider) on the three relevant days. Dr. Kelly signed a letter to Chalimoniuk's regular physician, Dr. James Kluzinski, stating that Chalimoniuk had given his permission to inform Dr. Kluzinksi that Chalimoniuk was admitted to Fairbanks Hospital on August 4. The Fairbanks Hospital "Initial Screening" form indicates that Chalimoniuk's initial evaluation was conducted on August 4. The insurance form was completed and submitted for a purpose other than FMLA leave, and contained no definition of "services" as that term was used on the form. Nor is there any indication on this form that Chalimoniuk was in treatment that rendered him unable to work on the three days in question. In light of the complete absence of any evidence in the record that the term "services" included "treatment" as defined by the FMLA, the insurance form is inadequate to create a genuine issue of material fact regarding whether Chalimoniuk was in treatment on July 31, August 2 or August 3.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*