**Linda MURPHY, Plaintiff,**

v.

**NORTH AMERICAN LIGHTING, Defendant.**

No. 07–2027.

United States District Court, C.D. Illinois.

Feb. 13, 2008.

Daniel Curtis Jones, Hefner Eberspacher Tapella Armstrong & Grove, Mattoon, IL, for Plaintiff.

John B. Renick, McMahon Berger Hanna Linihan Cody & McCarthy, St. Louis, MO, for Defendant.

## ORDER

BAKER, District Judge.

The plaintiff, Linda Murphy ("Murphy"), commenced this suit against her former employer, North American Lighting, Inc. ("NAL"), for interfering with her rights pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq* ("FMLA").

NAL denies it has interfered with Murphy's rights and has filed a motion for summary judgment. For the following reasons, the motion [23] is granted.

## BACKGROUND

Murphy was hired by NAL in August 2002. At that time, she received a copy of NAL's Employee Handbook (the "Handbook"). The Handbook explains NAL's attendance policy and the consequences of excessive absences.

NAL's "No Fault Point System" assesses points for unexcused absences from work. If an employee receives seven points in any twelve-month period, he or she will be terminated. Murphy knew about NAL's attendance policy and the point system.

The Handbook explains the FMLA, the availability of leave, who is eligible, and the process for approval of FMLA leave. Murphy has requested FMLA leave several times while employed at NAL. She first took FMLA leave from January 18 through February 8, 2005. Thereafter, she injured her knee and commenced additional FMLA leave on April 8, 2005. Murphy exhausted her remaining FMLA leave and took extended medical leave for knee surgery and recovery. She returned to work on January 16,2006. From March 27, 2006 until May 26, 2006, Murphy took a workers compensation leave of absence.

Three months later, in August 2006, Murphy took an unplanned vacation day, a personal absence day, and two unexcused

absences due to migraine headaches. She was assessed 1.5 points for her absences. Her new supervisor suggested that Murphy obtain an FMLA packet from NAL's Human Resources Department ("HR") to see if she could get the points rescinded. Murphy went to HR, obtained an FMLA packet and in September 2006 submitted forms to NAL pertaining to her migraines. NAL approved the request; the points were rescinded.

Several weeks later, Murphy decided to take two days of FMLA leave to care for her 23–year–old daughter, who was to undergo a medical procedure. Murphy picked up an FMLA packet on October 1, 2006. She thought the procedure was scheduled for October 3, but when she and her daughter arrived at the doctor's office they learned the appointment was for "a workup," with the actual procedure to be performed on October 11, 2006. Murphy was absent on October 3, 11 and 12, 2006. She turned in the completed FMLA packet to HR on October 13, 2006.

NAL began to process Murphy's request and discovered that she did not qualify for FMLA leave because she had not worked 1,250 hours over the previous twelve months. NAL then reviewed Murphy's August FMLA request and learned that it had mistakenly approved that leave because Murphy had not worked the requisite number of hours.[1] On October 16, 2006, Murphy was notified that her October FMLA request was denied because she had not worked 1,250 hours over the previous year. Murphy had accrued points for various unexcused absences over the previous year, and the three days she was absent to care for her daughter placed her over the seven-point limit. As a consequence, she was terminated.

### ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir.2003). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind.*

---

1. On both the August and October forms, Murphy signed a statement that she had worked 1,250 hours in the previous twelve months. When NAL learned it had mistakenly approved the August request, it "didn't recoup anything from her; we just let it ride as our mistake and to her benefit." Knauer Dep. 33. In other words, Murphy was not reassessed the points that had previously been rescinded.

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed.R.Civ.P. 56(e).

NAL argues it is entitled to summary judgment because Murphy was not entitled to take FMLA leave to care for her daughter. Specifically, NAL contends (1) Murphy did not work 1,250 hours in the previous twelve months, 29 U.S.C. § 2611(2)(A)(ii); and (2) her daughter did not have a physical or mental disability, 29 U.S.C. § 2611(12)(B). Murphy argues that NAL is equitably estopped from arguing that she had not worked the requisite number of hours in the previous twelve months. She further argues that NAL is estopped from asserting any other basis for denying her benefits because no other reason was given for her termination.

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any [FMLA] right." 29 U.S.C. § 2615(a)(1). Refusing to authorize FMLA leave to an employee who is entitled to take that leave constitutes interference. 29 C.F.R. § 825.220(b).

### I. Equitable estoppel

Murphy claims that NAL is estopped from denying her FMLA leave on the basis of her failure to work 1,250 hours in the previous twelve months. She further contends that because the stated reason for the denial was her failure to work the requisite number of hours, NAL is estopped from claiming any other justification for denying her FMLA leave.

"Like other equitable doctrines, the doctrine of estoppel is invoked in a variety of statutory contexts[.]" *Dormeyer v. Comerica Bank–Illinois*, 223 F.3d 579, 582 (7th Cir.2000). *See also Minard v. ITC Deltacom Comm., Inc.*, 447 F.3d 352, 358 (5th Cir.2006); *Duty v. Norton–Alcoa Proppants*, 293 F.3d 481, 494 (8th Cir.2002).

■ The United States Supreme Court addressed the issue of equitable estoppel in *Heckler v. Community Health Servs., Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). *Heckler* drew upon The Restatement (Second) of Torts and 3 J. Pomeroy, Equity Jurisprudence § 805. The elements of equitable estoppel include (1) a definite misrepresentation; (2) reasonable reliance; and (3) detriment to the party who acted in reasonable reliance on the misrepresentation. *Heckler*, 467 U.S. at 59, 104 S.Ct. 2218 (emphasis added) (citing Restatement (Second) of Torts § 894(1) (1979)); *Minard*, 447 F.3d at 358.

■ Murphy can show NAL's misrepresentation, and her detrimental reliance on that misrepresentation. NAL represented that she had worked the requisite number of hours when it approved her request for August FMLA leave. She claims that she relied on that misrepresentation when she took three more days of FMLA leave in October.

But Murphy does not address whether her reliance was reasonable. She must show that she did not know, nor should she have known, of NAL's misrepresentation. *Heckler*, 467 U.S. at 59 n. 10, 104 S.Ct. 2218 (*citing* 3 J. Pomeroy, Equity Jurisprudence § 810); *Minard*, 447 F.3d at 358. When Murphy completed her August leave request, it was within her knowledge to know or ascertain whether she had worked 1,250 hours in the previous year. Murphy knew that she had taken medical leave for almost seven of the previous twelve months. Murphy did not review her own records or ask someone in HR to determine the number of hours worked. Murphy Dep. 87. She remembered she'd gone back to work in January and figured she "probably got [the 1,250 hours] in." Murphy Dep. 72. She didn't remember that she was also out on leave from March to May: "It just did not dawn on me." Mur-

phy Dep. 73. Forgetting a two-month leave taken several months prior "strains credulity." *Woodford v. Community Action, Inc.,* 268 F.3d 51, 54 (2d Cir.2001).

But even if Murphy can meet the requirements of equitable estoppel as to her *eligibility,* she must still show that she was otherwise *entitled* to benefits. Murphy argues otherwise; she claims that if NAL is estopped as to the eligibility issue, it is also estopped on the entitlement issue. The authority she cites is not helpful to her argument. The court can find no authority on point, and disagrees with this contention.[2]

## II. FMLA leave to care for an adult son or daughter

Subject to the other provisions of the FMLA, employees are entitled to FMLA leave "to care for the ... son [or] daughter ... of the employee, if such ... son [or] daughter ... has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). A son or daughter is defined as a child "under 18 years of age; or 18 years of age or older and incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611(12)(A)-(B).

■ NAL contends that Murphy was not entitled to FMLA leave because her 23–year–old daughter does not have a mental or physical disability. To define "mental or physical disability," the court must turn to the Code of Federal Regulations. 29 C.F.R. § 825.113(c)(2) (applying definitions pertaining to the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.* ("ADA"); 29 C.F.R. § 1630.2(h), (i), and (j)). A physical disability is "an impairment. that substantially limits one or more of the major life activities." 29 C.F.R. § 825.113(c)(2) (FMLA); 29 C.F.R.

§ 1630.2(g)(1)(ADA). Walking is a major life activity. 29 C.F.R. § 1630.2(h)(2)(i).

Murphy stated that her daughter "was incapable of self-care due to a medical procedure performed on her back." Murphy Answer to Interrogs. No. 8. Murphy further stated, "My daughter received shots in her lower back on her spine to alleviate pain and inflamation as a piece of her vertebrae had broken off and was sitting next to her spine. This condition made her unable to walk at times. I helped her with meals, bathroom, bathing, [and] medications (she had to be awakened to keep medications in her so she would not spasm)." Murphy Answer to Interrogs. No. 16. Murphy can show that her daughter had an impairment that limited at least one major life activity.

However, Murphy must show more than that; she must show that the impairment *substantially* limited her daughter's ability to engage in a major life activity. *See* 29 C.F.R. § 825.113(c)(2); 29 C.F.R. § 1630.2(j). "Substantial limitation" is determined by the nature and severity, duration, and permanent or long term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). That is,; the impairment must prevent or severely restrict the individual from an activity of central importance to daily life, and the impact of the impairment must be permanent or long term. *Toyota Motor Mfg., Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615(2002).

It is important to distinguish between the injury and the impairment. Murphy's daughter had a broken vertebrae, but there is no evidence that the injury itself substantially limited any of her major life activities. Rather, the impairment result-

---

**2.** Murphy cites to several cases where the employee received advance written approval of FMLA leave for a specific time frame and a particular purpose. *See Minard,* 447 F.3d 352; *Duty,* 293 F.3d 481. These cases are factually distinguishable, because Murphy turned in her completed forms once she returned to work.

ed from treatment of the injury. Murphy's daughter "needed assistance going to the restroom, eating and taking her medications, as she was to be laying flat and doing nothing." She was "sore and in pain, taking medications, and had to be awakened in the middle of the night to take" her medications. To assist her daughter, Murphy stayed with her for two nights. Murphy Mem. at 11 [d/e # 24]. Although the injury—the broken vertebrae—might be long term or even permanent, the impact of the impairment was short term. It does not constitute a substantial limitation.

Without a finding of substantial limitation, Murphy's daughter is not considered disabled as the term is defined by the Code of Federal Regulations. 29 C.F.R. § 825.113(c)(2); 29 C.F.R. § 1630.2(j). Thus, Murphy had no enforceable right to FMLA leave to care for her 23–year–old daughter. A claim of interference with FMLA rights cannot be sustained by someone who has no rights to enforce. *See Kauffman v. Federal Express Corp.,* 426 F.3d 880, 885 (7th Cir.2005) (noting an "interference/entitlement theory ... requires ... proof that the employer denied the employee his or her entitlements under the [FMLA]"). Consequently, NAL is entitled to summary judgment on Murphy's FMLA claim.

### CONCLUSION

The defendant's motion for summary judgment [23] is granted. This case is terminated. The parties shall bear their own costs.